**PUBLISH**

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 12 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LYNN M. CADENA,

Plaintiff-Appellee,

v.

THE PACESETTER CORPORATION,

Defendant-Appellant.

_____

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

Amicus Curiae.

No. 99-3047
No. 99-3166

Appeal from the United States District Court
for the District of Kansas
(D.C. No. 97-CV-2659-KHV)

Richard P. Barkley, of Brownstein, Hyatt & Farber, P.C. (Lisa Hogan, of Brownstein, Hyatt & Farber, P.C., Denver, Colorado, and Carl A. Gallagher and Patrice M. Brown, of McAnany, Van Cleave & Phillips, P.C., Kansas City, Kansas, with him on the briefs) for Appellant.

Michael S. Ketchmark, of Davis, Ketchmark & Eischens (Brett A. Davis, of Davis, Ketchmark & Eischens, Kansas City, Missouri, and Scott A. McCreight and Korey A. Kaul, of Sprenger & McCreight, L.C., Kansas City, Missouri, with him on the brief), for Appellee.

John F. Suhre, Attorney (C. Gregory Stewart, General Counsel Designate, Vincent J. Blackwood, Assistant General Counsel, Philip B. Sklover, Associate General Counsel, and Jodi B. Danis, Attorney, on the brief), of the Equal Employment Opportunity Commission, Office of General Counsel, Washington, D.C., for Amicus Curiae.

---

Before **LUCERO, McKAY,** and **MURPHY,** Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I. INTRODUCTION

For four months, Lynn Cadena's supervisor at work subjected her to severe sexual harassment. As a consequence, Cadena successfully sued her former employer, the Pacesetter Corporation ("Pacesetter"), for violating Title VII of the 1964 Civil Rights Act. Pacesetter brought two separate appeals, which are now consolidated in the instant appeal. Pacesetter first challenges the underlying judgment, asserting the following arguments: (1) the district court erred in denying its post-verdict motion for judgment as a matter of law because no reasonable jury could have rejected its affirmative defense premised on *Faragher v. City of Boca Raton*, 118 S. Ct. 2275 (1998) and *Burlington Industries v. Ellerth*, 118 S. Ct. 2257 (1998); (2) in light of the Supreme Court's decision in *Kolstad v. American Dental Association*, 119 S. Ct. 2118 (1999), rendered subsequent to the entry of judgment, Pacesetter is entitled to either judgment as a

matter of law or a new trial on the issue of punitive damages; and (3) the district court's erroneous admission of testimony mandates a new trial. Pacesetter also appeals the district court's award of attorneys' fees. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms** the judgments entered by the district court.

## II. BACKGROUND

### A. Factual Background

Pacesetter is a home improvement company which sells windows, siding, doors, and cabinets. In July 1996, Pacesetter hired Cadena to work as a telemarketer in its Lenexa, Kansas office. During the relevant time period, Timothy Whittinghill was the general manager of the Lenexa office. Charles Bauersfeld, David Hawley, and Ann Humphrey were the telemarketing managers for that office and supervised Cadena.

Several months after Cadena was hired, Bauersfeld began subjecting her to a steady barrage of severe sexual harassment. In November, Bauersfeld told Cadena he had experienced a "wet dream" about her which "was erotic" and that he "couldn't wait to have more." Cadena immediately complained about this comment to Hawley, who responded by stating "that is the way Charlie is."

Hawley further indicated that officials at the company's headquarters knew about Bauersfeld's behavior but tolerated it.

Following that first harassing comment, Bauersfeld often told Cadena that she needed to go out with him "so that he could have more wet dreams about [her]." Bauersfeld constantly made references of a sexual nature to Cadena. One day, for example, when Cadena was not having great success with telemarketing, Bauersfeld asked, "What's wrong, Lynn, aren't you getting enough sex?" Another time, when Cadena asked Bauersfeld "where do you want me," referring to which cities he wanted her to call, Bauersfeld responded, "Well, preferably on my desk."

Bauersfeld also physically harassed Cadena on a regular basis. Bauersfeld would often call Cadena into his office and touch her in a sexual manner, massaging her lower back, putting his arms around her, touching her hair and the front of her body. He would touch her in this manner most often when she was on the phone conducting her telemarketing work. Bauersfeld even asked Cadena to change her physical appearance so she would not "turn[] him on too much."

Finally, on February 13, 1997, Bauersfeld approached Cadena in her cubicle and stated, "Lynn, why don't you flash Rick your breasts to get him going. I know that sure as hell would turn me on." Bauersfeld then told Cadena, "I am just joking," but immediately thereafter whispered in her ear, "You know

-4-

what they say, though, Lynn, the truth is always said in jest." After Cadena completed her phone call, she began crying. Subsequently, she entered Bauersfeld's office and told him that his behavior bothered her and that it needed to stop. Bauersfeld merely responded, "Honey, I didn't mean anything by it. You know, you are one of my favorite sweethearts."

The following day, Cadena informed Hawley of the incident and complained to him about all of the harassment which she had endured. Hawley simply shrugged his shoulders and stated, "Lynn that's the way he is. . . . There's nothing nobody can do about it. That's Charlie for you. What can I say?" Hawley indicated further that Whittinghill and people at Pacesetter's corporate headquarters were aware of Bauersfeld's conduct but would do nothing about it because Bauersfeld made too much money for Pacesetter. Finally, Hawley suggested that if Cadena was unhappy with the situation, she should quit. Cadena also attempted to discuss the situation with Whittinghill that week, but he was not in the office.

On February 20, Cadena delivered a letter of resignation, which reiterated the problems she had been experiencing with Bauersfeld. That same day, Hawley flew to Florida, where Whittinghill was already vacationing, to play golf with Whittinghill. While there, Hawley informed Whittinghill about Cadena's complaint. When Whittinghill returned to Kansas, he questioned Bauersfeld

about the February 13 incident, which Bauersfeld fully admitted. On February 28, Whittinghill telephoned Cadena, who informed him of all the problems she had experienced with Bauersfeld. Whittinghill then told her she should view Bauersfeld's conduct as a compliment to Cadena's attractiveness. Whittinghill also tried to make Cadena feel guilty about jeopardizing Bauersfeld's career by emphasizing Bauersfeld's vision problems. Finally, Whittinghill offered Cadena a raise if she would return to work and drop her sexual harassment complaint.

The following week, Cadena wrote Whittinghill a letter setting out the incidents of sexual harassment and the company's failure to address the problem and indicating she did not wish to return to work. In response, Whittinghill called her again, telling Cadena that Bauersfeld had been written up and would be fired if another incident occurred. The next day, Cadena phoned Hawley, who opined that Bauersfeld would not be fired even if he continued his sexually harassing behavior. Cadena did not return to work at Pacesetter.

### B. Procedural Background

On March 27, 1997, Cadena filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which issued Cadena a Notice of Right to Sue. In December, she sued Pacesetter in federal district court, alleging Pacesetter had violated Title VII of the 1964 Civil Rights Act. *See* 42 U.S.C. § 2000e *et. seq.* Pacesetter subsequently moved for summary judgment,

ultimately relying on the affirmative defense delineated in *Faragher v. City of Boca Raton*, 118 S. Ct. 2275 (1998) and *Burlington Industries v. Ellerth*, 118 S. Ct. 2257 (1998). The district court denied Pacesetter's motion for summary judgment, concluding that Cadena had alleged facts from which a jury could reject the *Burlington/Faragher* defense.

The district court held a three-day jury trial in September of 1998. The jury ultimately returned a verdict in favor of Cadena and against Pacesetter. The jury awarded Cadena $50,000 in compensatory damages for emotional distress and $700,000 in punitive damages. The district court then reduced the total award to $300,000 pursuant to the statutory cap and entered judgment reflecting this award. *See* 42 U.S.C. § 1981a(b)(3)(D). Pacesetter subsequently moved for judgment as a matter of law or, in the alternative, a new trial. The district court denied that motion.

Cadena then moved for attorneys' fees and related expenses totaling $163,582. Pacesetter objected to this motion, arguing, *inter alia*, that Cadena had engaged in the disapproved practice of "block billing." The district court denied that objection but reduced the fees sought by Cadena, awarding her $138,104 in fees and costs.

## III. DISCUSSION

**A. Judgment as a Matter of Law on the *Burlington*/*Faragher* Defense**

*Burlington* and *Faragher* provide an employer an affirmative defense to a Title VII claim premised on vicarious liability when there has been no tangible employment action taken against the employee.[1] To succeed on the defense, the employer must establish by a preponderance of the evidence two elements: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 118 S. Ct. at 2292-93; *see also Burlington*, 118 S. Ct. at 2270. The two elements of the *Burlington*/*Faragher* defense were submitted as special interrogatories to the jury, which found Pacesetter failed to meet its burden on both elements. Pacesetter then moved for judgment as a matter of law, arguing no reasonable jury could have found against it on the *Burlington*/*Faragher* defense. The district court denied that motion, and Pacesetter now appeals that ruling.

This court reviews *de novo* the district court's denial of a motion for judgment as a matter of law, construing the evidence in a light most favorable to the nonmoving party. *See Vining v. Enterprise Fin. Group*, 148 F.3d 1206, 1213

---

[1] Cadena does not assert on appeal that she suffered any tangible employment action. This court, therefore, offers no opinion on that question.

(10th Cir.1998). "[W]e . . . will reverse only if there is no legally sufficient evidentiary basis ... with respect to a claim or defense ... under the controlling law." *Smith v. Northwest Fin. Acceptance, Inc.*, 129 F.3d 1408, 1412 (10th Cir. 1999) (quotation omitted). Because the affirmative defense in this case requires Pacesetter to demonstrate two elements, we must affirm the district court's denial of the motion if a reasonable jury could have found against Pacesetter on either element. *See Clark v. Brien*, 59 F.3d 1082, 1086 (10th Cir. 1995).

Contrary to Pacesetter's contention, a reasonable jury could well conclude that Pacesetter had failed to demonstrate by a preponderance of the evidence "that [Pacesetter] exercised reasonable care to prevent and correct promptly any sexually harassing behavior." *Faragher*, 118 S. Ct. at 2293. In arguing that Pacesetter promptly corrected Bauersfeld's sexual harassment of Cadena, Pacesetter relies entirely on the evidence of Whittinghill's actions after he learned about Bauersfeld's flashing comment of February 13, 1997.[2] Pacesetter, however, fails to acknowledge the substantial evidence demonstrating that Whittinghill, as well as people working at Pacesetter's corporate headquarters, knew of

---

[2]Pacesetter concedes that if Whittinghill did not exercise reasonable care to promptly correct Bauersfeld's sexually harassing behavior, the jury would be entitled to reject the *Burlington/Faragher* defense. Because this court concludes the evidence supported a finding that Whittinghill did not take reasonable steps to remedy Bauersfeld's conduct, we need not decide the disputed question of whether the company could also be liable based on Hawley's or Humphrey's similar inaction.

Bauersfeld's harassing behavior well before the February 1997 incident yet did nothing to stop it.

For example, Cadena testified that when she complained to Hawley both in November of 1996 and February of 1997, Hawley stated that Whittinghill and other corporate officers were already cognizant of Bauersfeld's sexually harassing conduct but would not address it because he made too much money for the company. Moreover, Greg Fuller, Cadena's co-worker, testified that when he complained to Whittinghill about Bauersfeld's offensive behavior in February 1997, Whittinghill merely responded "that things had been that way for a long time at Pacesetter, that the business world was full of pricks like Charlie . . . [a]nd . . . to get used to it because that is the way the business world was." Fuller's testimony suggests that Whittinghill was previously aware of Bauersfeld's conduct but that neither he nor anyone else at Pacesetter intended to stop it. Finally, Cadena testified that the first time Whittinghill spoke with her about her complaints, he justified Bauersfeld's behavior as a "compliment" to Cadena and did not offer to take corrective action. Instead, he simply told Cadena if she returned to work and dropped her complaints she would receive a raise. A jury could reasonably conclude that this response did not constitute "reasonable care to . . . correct promptly [the] sexually harassing behavior." *Id.*

In addition to the ample evidence demonstrating Whittinghill's less than reasonable efforts to remedy Bauersfeld's sexual harassment, other evidence was presented indicating the company's investigation of Bauersfeld's conduct was inadequate, if not a complete sham. Cricket Thompson, Pacesetter's assistant vice-president of Human Resources who was in charge of investigating Bauersfeld's sexual harassment in early 1997, conceded that she never spoke with Cadena, Bauersfeld, Humphrey, Hawley, Whittinghill, or Fuller. Thompson further admitted that when she conducted her investigation, she did not know that Cadena was the complainant or that Bauersfeld was the harasser. Thompson even testified that she was unsure if she had ever been told the nature or the specifics of the complaint.

Based on all this evidence,[3] the jury's finding that Pacesetter failed to prove by a preponderance of the evidence that it "exercised reasonable care to prevent and correct promptly [Bauersfeld's] sexually harassing behavior" was more than reasonable. *Id*. Because the jury reasonably found Pacesetter failed to meet its burden on the first element of the *Burlington/Faragher* defense, the

---

[3]We do not mean to suggest that the evidence discussed above constitutes the only evidence to support the jury's finding on the first element of Pacesetter's affirmative defense. It is, however, more than sufficient to support that finding. This court, therefore, need not discuss other such evidence.

district court properly denied Pacesetter's post-verdict motion for judgment as a matter of law based on that defense.

## B. Pacesetter's *Kolstad* Arguments

Subsequent to the district court's entering judgment, which included an award of punitive damages, the Supreme Court handed down its decision in *Kolstad v. American Dental Association*, 119 S. Ct. 2118 (1999). In *Kolstad*, the Court held that in a Title VII case based on vicarious liability for the acts of a managerial employee, the employer cannot be liable for punitive damages if the managerial employee's actions were "contrary to the employer's good-faith efforts to comply with Title VII." *Id.* at 2129 (quotation omitted). Pacesetter first argues that this court should reverse the district court's judgment and enter judgment as a matter of law in its favor on the issue of punitive damages because the undisputed evidence demonstrates that Bauersfeld's harassing conduct was contrary to Pacesetter's good faith efforts to prevent sexual harassment and thus comply with Title VII. Based on a review of the evidence, this court concludes that Pacesetter is not entitled to judgment as a matter of law under *Kolstad*.[4]

----

[4]It is unclear whether the good-faith-compliance standard set out in *Kolstad* represents an affirmative defense on which the defendant bears the burden of proof or whether the plaintiff must disprove the defendant's good faith compliance with Title VII. *See Kolstad v. American Dental Ass'n*, 119 S. Ct. 2118, 2128-30 (1999). This court need not resolve that question in the instant case. Even assuming that, under *Kolstad*, Cadena would be required to prove by a preponderance of the evidence that Pacesetter failed to make good faith efforts to

This court recently stated that "*Kolstad* provides us no definitive standard for determining what constitutes good-faith compliance with" Title VII. *EEOC v. Wal-Mart Stores, Inc.*, 187 F.3d 1241, 1248 (10th Cir. 1999). *Wal-Mart*, however, recognized that to avail itself of *Kolstad*'s good-faith-compliance standard, an employer must at least adopt antidiscrimination policies and make a good faith effort to educate its employees about these policies and the statutory prohibitions. *See id.* at 1248-49. Pacesetter asserts that the undisputed evidence demonstrates both that it maintains a strong policy against sexual harassment and that it adequately trained its employees to comply with that policy and Title VII.

Contrary to Pacesetter's contention, there was evidence presented at trial undermining Pacesetter's claim that it made good faith efforts to educate employees about sexual harassment. For example, Humphrey, the manager responsible for sexual harassment training at the office where Cadena worked, testified that she discussed the topic of sexual harassment at meetings with her co-workers on a monthly basis. However, Richard Payne, another telemarketing manager at the Lenexa office, testified that no such monthly training sessions occurred. More significantly, Humphrey conceded that when she gave her deposition testimony, she believed that a male supervisor would not commit

comply with Title VII in order to recover punitive damages from Pacesetter, the evidence presented was sufficient to meet that standard.

sexual harassment if he either exposed his genitalia to a female subordinate or grabbed her breasts, so long as he apologized after the incident. Based on Humphrey's admitted ignorance about sexual harassment, a jury could reasonably infer that Pacesetter failed to make good faith efforts to adequately educate its employees about its non-discrimination policy and Title VII.

Moreover, *Kolstad* itself suggests that the good-faith-compliance standard requires the employer to make "good faith efforts to *enforce* an antidiscrimination policy." 119 S. Ct. at 2130 (emphasis added). Therefore, even if an employer-defendant adduces evidence showing it maintains on paper a strong non-discrimination policy and makes good faith efforts to educate its employees about that policy and Title VII, a plaintiff may still recover punitive damages if she demonstrates the employer failed to adequately address Title VII violations of which it was aware. As discussed *supra*, Cadena presented substantial evidence suggesting that Pacesetter knew about Bauersfeld's sexually harassing conduct but failed to take any action to stop it. *See supra* Section III.A. Because sufficient evidence was presented on which a jury could have found Pacesetter did not make good faith efforts to comply with Title VII, this court will not enter judgment as a matter of law in favor of Pacesetter on the question of punitive damages.

Pacesetter alternatively contends it is entitled to a new trial on punitive damages because (1) the jury was not instructed on the *Kolstad* good-faith-compliance standard, (2) the jury applied the wrong standard in deciding the question of punitive damages,[5] and (3) the district court similarly applied the wrong standard on punitive damages when resolving Pacesetter's post-verdict motion for judgment as a matter of law. This court concludes that Pacesetter waived the first two of these challenges to punitive damages. Federal Rule of Civil Procedure 51 provides, "No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Pacesetter does not and cannot contend that it objected to the district court's instruction to the jury concerning the standard for imposing punitive damages. Pacesetter stipulated to a substantially similar instruction to the one given and did not itself propose a good faith compliance instruction. Instead, Pacesetter argues it should be excused from the objection requirement of

---

[5]This court fails to understand the difference between these first two arguments. A jury applies whatever legal standard the district court instructs it to apply. *See United States v. Lonedog*, 929 F.2d 568, 576 (10th Cir. 1991) (noting that this court assumes the jury followed its instructions). If the jury in this case applied an incorrect legal standard, it only did so because the jury instructions were erroneous. Pacesetter's challenge, therefore, must be to the instructions informing the jury of the standard to apply in resolving the punitive damages issue.

Rule 51 because *Kolstad* represents a significant change in the law subsequent to the trial. Pacesetter's position is that it could not be expected to have anticipated this change and, therefore, it is entitled to a new trial even if it failed to object to the punitive damages instructions as otherwise required by Rule 51.

In support of this argument, Pacesetter cites three cases, *United States v. Spring*, *Anixter v. Home-Stake Production Co.*, and *Key v. Rutherford*, in which this court remanded for a new trial because the jury was improperly instructed in light of Supreme Court decisions handed down after judgment was entered. *See* 80 F.3d 1450, 1464-66 (10th Cir. 1996); 77 F.3d 1215, 1231-32 (10th Cir. 1996); 645 F.2d 880, 883 (10th Cir. 1981). This court, however, does not read these cases as establishing a categorical rule that in an appeal from a district court judgment, we must remand for a new trial whenever a Supreme Court decision issued subsequent to the entry of that judgment calls into question or renders incorrect jury instructions given at trial.

*Spring* was a criminal appeal in which this court reviewed the challenged jury instructions for plain error, pursuant to Federal Rule of Criminal Procedure 52(b). The *Spring* court ultimately remanded for retrial only because it determined that in light of a Supreme Court decision issued subsequent to the defendant's conviction, the instructions given at trial were plainly erroneous, affected the defendant's substantial rights, and undermined the fairness, integrity,

or public reputation of the judicial proceedings. *See* 80 F.3d at 1464-66; *see also United States v. McGuire*, 200 F.3d 668, 671 n.2 (10th Cir. 1999) (holding that we review for plain error only a district court's failure to submit a jury instruction when the appellant-defendant made no objection at trial, even if the failure to object was based upon well-settled circuit precedent subsequently overruled by the Supreme Court). If a criminal defendant must show plain error rather than automatic entitlement to a new trial when he failed to object to jury instructions ultimately rendered erroneous by a subsequent Supreme Court decision, certainly a similarly defaulting civil litigant is not *automatically* entitled to a new trial.

Moreover, in the two civil cases on which Pacesetter relies, this court made clear that we will excuse a party's failure to object to jury instructions and address its challenge to those instructions on appeal only "when the interests of justice require," a standard which necessarily involves a case-by-case determination.[6] *Key*, 645 F.2d at 883; *see also Anixter*, 77 F.3d at 1231-32 ("Like

---

[6]We recognize that, in the civil context, this court has also stated it may review the propriety of jury instructions which were not objected to at trial if the instructions given were "patently plainly erroneous and prejudicial." *Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 553 (10th Cir. 1999) (quotation omitted). It is interesting to note that the Federal Rules of Civil Procedure reference neither the patently-plainly-erroneous-and-prejudicial standard nor the interests-of-justice exception to Rule 51. *See Hammer v. Gross*, 932 F.2d 842, 847 (9th Cir. 1991) (en banc) (plurality opinion) ("[T]here is no 'plain error' exception [to Rule 51] in civil cases in this circuit."); *Deppe v. Tripp*, 863 F.2d 1356, 1361-62 (7th Cir. 1988) (noting "there is a conspicuous absence of a plain error doctrine provision the Federal Rules of Civil Procedure" and holding that "in civil cases a plain error

the court in *Key*, we believe that *in this case* the interests of justice and the policies underlying Rule 51 reject forcing an appellant to object to a jury instruction where, based on the state of the then applicable law, her objection would have been futile." (emphasis added)).  This "rarely" applied "narrow exception" to Rule 51, however, should not be employed in this appeal. *Glasscock v. Wilson Constructors, Inc.*, 627 F.2d 1065, 1067-68 (10th Cir. 1980).

Prior to trial in the instant case, this court had "not had occasion to determine comprehensively what burden a plaintiff must carry" to be able to receive punitive damages for a Title VII violation.  *Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 551 (10th Cir. 1999).  One year before Cadena's case went to trial, however, the very district court in which this case was tried had issued a published memorandum and order in a different case entitled *Baty v. Willamette Industries*, rejecting a post-verdict motion for judgment as a matter of law on

---

doctrine is not available to protect parties from erroneous jury instructions to which no objection was made at trial").  Apparently, these concepts are purely creatures of case law.  Even if this court, however, were to conclude that the instructions given in the instant case were patently plainly erroneous and prejudicial and thus determine whether relief is warranted, Pacesetter "has the heavy burden of demonstrating fundamental injustice."  *Medlock*, 164 F.3d at 553 (quotation omitted).  Upon a thorough review of the record in the instant case, particularly the evidence which this court discussed in affirming the denial of judgment as a matter of law on both the *Burlington/Faragher* defense and punitive damages, we are satisfied that the district court's failure to instruct the jury on the good-faith-compliance standard did not result in a fundamental injustice.

punitive damages in a Title VII suit premised on vicarious liability.  *See* 985 F.

Supp. 987, 996 (D. Kan. 1997); *Baty v. Willamette Indus.*, 172 F.3d 1232, 1242

(10th Cir. 1999) (recognizing that the district court's decision was limited to the

plaintiff's vicarious liability theory).  In *Baty*, the district court concluded that the

jury properly awarded punitive damages because, *inter alia*, "plaintiff presented

evidence from which a reasonable jury could have inferred that management did

not really respond to plaintiff's complaints, despite knowledge of serious

problems with sexual harassment."[7]  *See Baty*, 985 F. Supp. at 996.  In essence,

the district court ruled that a plaintiff asserting vicarious liability against her

employer in a Title VII suit may receive punitive damages if she presents

evidence demonstrating the employer's failure to make good faith efforts to

remedy known harassment.  This standard is effectively the same as that

announced in *Kolstad*, in which the Court stated that under Title VII, an employee

is not entitled to punitive damages on a vicarious liability theory unless she

proves that the employer was not "making good faith efforts to enforce an

antidiscrimination policy."  *Kolstad*, 119 S. Ct. at 2130.  The good-faith-

compliance standard articulated in *Kolstad*, therefore, was entirely consistent with

---

[7]The district court's ruling that the jury properly awarded punitive damages was ultimately affirmed by this court on the precise grounds articulated by the district court.  *See Baty v. Willamette Indus.*, 172 F.3d 1232, 1242-43 (10th Cir. 1999).

an opinion which had been published by the district court in which Cadena brought her suit at the time it went to trial.

Other circuits had similarly foreshadowed the pronouncement of the good-faith-compliance standard in *Kolstad* prior to the instant trial. For example, in *Patterson v. P.H.P. Healthcare Corp.*, the Fifth Circuit reversed an award of punitive damages because there was no evidence "to show that PHP Healthcare took any action which was inconsistent with [its non-discrimination] policy . . . [nor] that PHP Healthcare had knowledge of [the harasser's] malicious or reckless conduct, or authorized, ratified, or approved [the harasser's] actions." 90 F.3d 927, 944 (5th Cir. 1996). As the Fifth Circuit later characterized this decision, "*Patterson* . . . put [employers] on notice that evidence of a faithfully-adhered-to non-discrimination policy may bar imputing punitive damages liability to an employer when its employee acts with malice or reckless indifference." *See Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 283 (5th Cir. 1999). Also prior to the trial in the instant case, the Eleventh Circuit had reversed an award of punitive damages against an employer for sexual harassment committed by its employee when the evidence showed that the employer "had a general policy against sexual harassment and did investigate the complaints it received." *Splunge v. Shoney's, Inc.*, 97 F.3d 488, 491 (11th Cir. 1996).

Research by Pacesetter prior to or during trial would have revealed the district court's published memorandum and order in *Baty*, as well as the Fifth Circuit opinion in *Patterson* and the Eleventh Circuit opinion in *Splunge*. A reading of these decisions, in turn, should have led Pacesetter to request an instruction informing the jury that Cadena cannot recover punitive damages if Bauersfeld's harassment was contrary to Pacesetter's good faith efforts to prevent and remedy sexual harassment. Such an instruction would not have differed significantly from that which Pacesetter now contends is mandated by *Kolstad*. The interests of justice, therefore, do not demand that this court excuse Pacesetter's failure to object to the district court's instructions concerning punitive damages. *See Deffenbaugh-Williams*, 188 F.3d at 284 ("*Kolstad*'s imputation holding was not such a sudden shift as to require, *in fairness*, giving Wal-Mart an opportunity to present additional evidence."). To the contrary, allowing Pacesetter to benefit from the serendipity of the *Kolstad* decision when it reasonably could have recognized the availability of the good-faith-compliance standard at the time of trial would work an injustice upon Cadena. This court thus concludes that Pacesetter waived for appellate review its argument that the jury was improperly instructed and applied the wrong standard concerning the imposition of punitive damages.

-21-

Finally, we reject Pacesetter's contention that remand is necessary because the district court, in deciding Pacesetter's post-verdict motion for judgment as a matter of law, failed to apply the good faith compliance standard. This court has already concluded that even under *Kolstad*, Pacesetter is not entitled to judgment as a matter of law on the question of punitive damages. *See supra*. Therefore, even if the district court did err in not considering the good faith compliance defense when deciding Pacesetter's motion, a question we need not decide, any such error was harmless.

## C. Evidence of Humphrey's and Bauersfeld's Affair

During Cadena's case-in-chief, she called Humphrey as a witness and asked Humphrey, *inter alia*, whether she ever had a sexual relationship with Bauersfeld. After Humphrey denied having a sexual relationship with Bauersfeld, Cadena asked whether Humphrey had ever told Mary Sorrels, a former Pacesetter employee, about the existence of such a relationship. Humphrey replied that she never made that disclosure to Sorrels and that she never admitted to Sorrels that she lied during her deposition about a relationship with Humphrey. Finally, when asked whether she had asked solicited Sorrels to lie about the purported sexual relationship with Bauersfeld if Sorrels was questioned about it during her deposition, Humphrey denied making such a request. Cadena later elicited testimony from Sorrels that Humphrey had confided in Sorrels about having a

sexual relationship with Bauersfeld, that Cadena knew about the relationship when still working at Pacesetter, that Humphrey admitted lying about the relationship in her deposition, and that Humphrey had asked Sorrels to similarly lie about the relationship if questioned.

On appeal, Pacesetter contends the district court erred in allowing both Humphrey's and Sorrels' testimony regarding Humphrey's relationship with Bauersfeld, thus entitling Pacesetter to a new trial. This court reviews a district court's decision to receive evidence for abuse of discretion. *See United States v. Guardia*, 135 F.3d 1326, 1328 (10th Cir. 1998).

Pacesetter first argues that any evidence concerning the alleged relationship should have been excluded as irrelevant. *See* Fed. R. Evid. 401, 402. As the district court recognized in its ruling admitting this testimony, evidence demonstrating a sexual relationship between Humphrey and Bauersfeld was directly relevant to rebut Pacesetter's asserted *Burlington/Faragher* affirmative defense. Under that defense, Pacesetter would not be liable if it showed that it "exercised reasonable care to correct promptly any sexually harassing behavior" and that Cadena "unreasonably failed to take advantage of any preventitive or corrective opportunities provided by [Pacesetter] or to avoid harm otherwise." *Faragher*, 118 S. Ct. at 2293. In arguing its motion *in limine* to exclude evidence concerning the purported relationship, Pacesetter indicated that it intended to

prove the second element of the affirmative defense by demonstrating Cadena failed to report Bauersfeld's harassment to management. Cadena did adduce evidence, however, showing that she complained about the harassment to Hawley and Bauersfeld himself. The jury, therefore, might have wondered why Cadena never reported Bauersfeld's harassing conduct to Humphrey, particularly since she was Cadena's only female supervisor. The evidence indicating Cadena knew Humphrey was having a sexual relationship with Bauersfeld was directly relevant to demonstrate that Cadena's decision not to report the harassment to Humphrey was reasonable.[8] Thus, the district court did not abuse its discretion in concluding this evidence was relevant.

Pacesetter next asserts the evidence should have been excluded under Federal Rule of Evidence 608(b). That rule provides in relevant part, "Specific instances of the conduct of a witness, *for the purpose of attacking or supporting the witness' credibility*, other than conviction of a crime as provided in rule 609, may not be proved by extrinsic evidence." Fed. R. Evid. 608(b) (emphasis

---

[8]The record of the motion *in limine* hearing belies Pacesetter's contention that "there was no suggestion that Cadena should have reported Bauersfeld's conduct to Humphrey." Although it is true that "Pacesetter's own witnesses testified that Cadena had complied with Pacesetter's policy against sexual harassment by reporting incidents to Hawley," as Pacesetter argues, that testimony was elicited after Cadena had completed her case-in-chief. Given Pacesetter's representations during the motion *in limine* hearing concerning its intended means of proving the second element of the affirmative defense, the district court properly ruled that the challenged testimony was relevant to that defense.

added).  As just discussed, the challenged testimony was not elicited solely "for the purpose of attacking . . . [Humphrey's] credibility."  *Id.*  Rule 608(b), therefore, does not require the exclusion of the challenged testimony.

Finally, Pacesetter argues the testimony concerning the alleged sexual relationship and perjury should have been excluded under Federal Rule of Evidence 403.  Rule 403 states, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."  Fed. R. Evid. 403.  "This court has recognized that exclusion of evidence under Rule 403 is an extraordinary remedy to be used sparingly."  *Koch v. Koch Indus.*, 203 F.3d 1202, 1229 (10th Cir. 2000) (quotation omitted).  We are unconvinced that the district court abused its discretion in concluding that the danger of prejudicing the jury by exposing it to evidence of the alleged sexual relationship and perjury did not substantially outweigh that evidence's probative value to rebut Pacesetter's affirmative defense.

**D.  Attorneys' Fees**

After the district court entered judgment in favor of Cadena reflecting an award of damages of $300,000, Cadena moved for an award of attorneys' fees and related nontaxable expenses.  Specifically, Cadena requested attorneys' fees of $156,846.30 and expenses totaling $6,735.70.  Pacesetter objected to Cadena's motion on numerous grounds, arguing, *inter alia*, that Cadena's use of "block

billing," i.e., lumping multiple tasks into a single entry of time, is precluded by this court's decision in *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983). Pacesetter thus requested that the district court reduce the amount of hours factored into its attorneys' fees calculus. The district court denied that objection, stating, "[T]he use of single entries of time expended for more than one task is not *per se* forbidden. In this case, plaintiff's counsel has produced contemporaneous time records that sufficiently meet the requirements set out in *Ramos*." The district court ultimately awarded Cadena $131,368.30 in attorneys' fees and $6,735.70 in related expenses.

On appeal, Pacesetter argues the district court should have further reduced the amount of time claimed by Cadena because her attorneys employed the block-billing practice. This court reviews for abuse of discretion a district court's award of attorneys' fees. *See Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1111 (10th Cir. 1998).

A plaintiff who prevails in a Title VII lawsuit "ordinarily is to be awarded attorney's fees in all but special circumstances." *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1492 (10th Cir. 1994) (quotation omitted). To recover such fees, however, the plaintiff must "prove and establish [the] reasonableness of each dollar, each hour, above zero." *Jane L. v. Bangerter*, 61

F.3d 1505, 1510 (10th Cir. 1995) (quotation omitted).  More specifically, in

*Ramos* this court stated,

> [I]f [prevailing parties] intend to seek attorney's fees . . . [their
> attorneys] must keep meticulous, contemporaneous time records to
> present to the court upon request.  These records must reveal, for
> each lawyer for whom fees are sought, all hours for which
> compensation is requested and how those hours were allotted to
> specific tasks–for example, how many hours were spent researching,
> how many interviewing the client, how many drafting the complaint,
> and so on.

713 F.2d at 553.

Pacesetter is correct in contending that *Ramos* admonishes attorneys who

wish to recover attorneys' fees not to utilize the practice of block billing, because

block billing does not precisely delineate "how . . . hours were allotted to specific

tasks." *Id.*  As the district court properly recognized, however, this court has not

established a rule mandating reduction or denial of a fee request if the prevailing

party submits attorney-records which reflect block billing.  *See Robinson v. City

of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998) ("[A] district court *may*

discount requested attorney hours if the attorney fails to keep 'meticulous,

contemporaneous records' that reveal 'all hours for which compensation is

requested and how those hours were allotted to specific tasks.'" (emphasis added)

(quoting *Ramos*, 713 F.2d at 553)).  This court's review of the time records

submitted by Cadena fails to convince us that the district court abused its

discretion in concluding that those records sufficiently allowed the court to

determine the time allotted by her attorneys to specific tasks and the reasonableness of that time. *See Roberts*, 149 F.3d at 1112 ("We recognize that the billing records submitted to the district court would benefit from greater specificity, but cannot conclude that the district court abused its discretion in awarding attorneys' fees."). We will not, therefore, disturb the attorneys' fees and related expenses awarded by the district court.

## IV. CONCLUSION

This court concludes that the district court properly denied Pacesetter's post-verdict motion for judgment as a matter of law premised on the *Burlington/Faragher* defense. Additionally, the Supreme Court's decision in *Kolstad* does not entitle Pacesetter to either judgment as a matter of law or a new trial. Furthermore, the district court did not abuse its discretion in admitting testimony concerning Humphrey's alleged sexual relationship with Bauersfeld and related perjury. This court, therefore, **AFFIRMS** the judgment entered by the District Court for the District of Kansas in favor of Cadena and against Pacesetter on her Title VII claim, in which Cadena was awarded $300,000 in compensatory and punitive damages. Finally, because the district court did not abuse its discretion in its award of attorneys' fees, this court **AFFIRMS** the judgment

entered by the district court awarding Cadena $131,368.30 in attorneys' fees and

$6,735.70 in related expenses.