Laurie **REED**, Plaintiff,

v.

**CRACKER BARREL OLD COUNTRY STORE, INC., d/b/a Cracker Barrel Old Country Store, Defendant.**

No. 2:99CV002.

United States District Court, M.D. Tennessee, Nashville Division.

June 4, 2001.

David A. Burkhalter, II, Kirk J Angel, Ronald A. Rayson, Burkhalter & Associates, P.C., Knoxville, TN, for plaintiff.

John Thomas Feeney, III, Feeney & Murray, PLLC, Nashville, TN, for defendant.

### MEMORANDUM AND ORDER

TRAUGER, District Judge.

Pending before the court is Defendant's Motion for Judgment as a Matter of Law (Docket No. 114), to which the plaintiff has responded (Docket No. 124). For the reasons stated herein, the motion is **DENIED**.

### I. PROCEDURAL HISTORY

After a trial on the merits of the plaintiff's claims of hostile environment sexual harassment and retaliation in violation of Title VII and retaliation in violation of the Tennessee Human Rights Act, the jury in this matter returned a verdict in favor of the defendant on the hostile environment claim and in favor of the plaintiff on the retaliation claims. Specifically, the jury found that the plaintiff had proved her claim of sexual harassment but that the defendant was not liable because it had also proved its affirmative defense. The jury did not award any compensatory damages on the retaliation claims, although the court subsequently awarded the plaintiff $2,500 in back pay. The jury returned an award of punitive damages to the plaintiff in the amount of $10,000.

Pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, the defendant filed the instant motion for judgment as a matter of law on the punitive damages awarded to the plaintiff by the jury.

### II. ANALYSIS

#### A. STANDARD OF REVIEW

In considering a motion for judgment as a matter of law, the court must review all the evidence in the record and draw all reasonable inferences in favor of the non-moving party. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 151, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). The court "may not make credibility determinations or weigh the evidence" but "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* Thus, "judgment as a matter of law will be proper where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party on that issue, or where a claim or defense cannot under the controlling law be maintained or defeated without a favorable finding on that issue." *Vance v. Spencer Co. Public Sch. Dist.,* 231 F.3d 253, 258 (6th Cir.2000); *see also Pouillon v. City of Owosso,* 206 F.3d 711, 719 (6th Cir.2000).

#### B. VERDICT UNDER THE JURY INSTRUCTIONS GIVEN

The defendant has not objected to the jury instructions and did not object either before or after the court read the

instructions to the jury. Pursuant to Federal Rule of Civil Procedure 51, the defendant has waived any objection to the instructions. Nonetheless, it is difficult for the court to construe the defendant's argument for judgment as a matter of law as something other than an objection to the instructions. Hence, before considering the defendant's argument, the court will review the sufficiency of the evidence presented under the instructions that were given to the jury. On review, the court finds that a reasonable jury following the law as stated by the court could determine that punitive damages were warranted on the plaintiff's claim of retaliation in violation of Title VII.

The parties submitted an agreed jury instruction on punitive damages to the court, which was used at trial. This instruction stated:

> In addition to the claims for compensatory damages already considered, you should consider whether the plaintiff is entitled to receive punitive damages for her claims of retaliation and / or her claim of hostile environment sexual harassment. If you do find that the defendant intentionally discriminated against the plaintiff, then the law allows you, but does not require you, to award punitive damages.
>
> The purpose of an award of punitive damages is, first, to punish a wrongdoer for misconduct, and second, to warn others against doing the same in the future.
>
> In this case you may award punitive damages if you find that the defendant engaged in a discriminatory practice or practices with malice or reckless indifference to the rights of the plaintiff to be free from such intentional discrimination in her employment.
>
> If you determine that the defendant's conduct justifies an award of punitive damages, then you may award an amount of punitive damages which all

jurors agree is proper. In fixing the amount, you should consider the following questions:

> (1) How offensive was the conduct?
>
> (2) What amount is needed, considering the defendant's financial condition, to prevent future repetition of this conduct?
>
> (3) Does the amount of punitive damages have a reasonable relationship to the actual damages awarded?
>
> If you do award punitive damages, you should fix the amount using calm discretion and sound reason. You must not be influenced by sympathy for or dislike of any party in this case.

(Docket No. 103 at 36)

In addition, the court instructed the jury on a corporation acting through its agents and representatives as follows:

> When a corporation is involved, it may act only through natural persons as its agents or employees; and, in general, any agent or employee of a corporation may bind the corporation by his acts and declarations made while acting within the scope of his authority delegated to him by the corporation, or within the scope of his duties as an employee of the corporation.
>
> In this case, the defendant corporation acts through managerial and supervisory employees, both at the corporate level and at the specific restaurant. This would include, for example, district managers, store managers, associate managers, and assistant managers.

(Docket No. 103 at 13)

The instructions stated that the defendant corporation acted through a number of people, including assistant managers, when they were acting within the scope of their authority or duties. Hooper was an assistant manager at the Crossville Cracker Barrel, and the plaintiff testified that

Hooper was acting within the scope of his responsibilities when he established the work schedule, assigned work areas, supervised the servers, made decisions regarding when each server could end his or her shift, and recommended that the plaintiff's employment be terminated.[1] The defendant did not offer any testimony to contradict this evidence. Thus, in performing those actions, Hooper was acting on behalf of the corporation in a managerial capacity. There was sufficient evidence for the jury to find, as it did, that the defendant, through Hooper, retaliated against the plaintiff for objecting to the hostile environment sexual harassment by lengthening her shifts, assigning her to less-profitable work areas, refusing to allow her to leave at her scheduled time, and recommending her termination.

There was also sufficient evidence presented for a reasonable jury to find that Hooper acted with malice or reckless indifference to the plaintiff's rights. The plaintiff testified to several comments made by Hooper both to her and to other employees in her presence, identifying her as a "troublemaker" and indicating that she had a "big mouth" that she "did not know how to keep shut." Hooper and other managerial employees of the defendant testified that they were aware that employees were allowed and expected to report any incidents of sexual harassment. The plaintiff also submitted the employee handbook into evidence, which included a sexual harassment policy.

Several witnesses also testified about Cracker Barrel's "open door policy," which is explained in the handbook as a policy of inviting employees to express all manner of concerns and suggestions to store managers.[2] In addition, Bob Miller, the former general manager of the Crossville Cracker Barrel, testified that employees were not to be retaliated against for making complaints or comments.[3]

Based on this evidence, a reasonable jury could find that Kirk Hooper knew that the plaintiff had a right to complain about sexual harassment without fear of reprisal. The jury could find that Hooper did retaliate against the plaintiff when she complained to him that his sexually harassing comments had to stop. The jury could find that Hooper was acting within the scope of his authority and his actions were imputed to the defendant. Thus, based on the court's instructions on the law, a reasonable jury could find that the defendant acted with malice and reckless indifference to the plaintiff's rights and that punitive damages were appropriate.

## C. KOLSTAD AND THE EFFECT OF THE FARAGHER AFFIRMATIVE DEFENSE ON PUNITIVE DAMAGES UNDER TITLE VII

Without objecting to the jury instructions, the defendant argues that punitive damages were inappropriate in this case, as a matter of law, under the Supreme Court's decision in *Kolstad v. American*

---

**1.** All references to trial testimony are drawn from the court's review of the audio recordings of the trial proceedings. No written transcript of the trial has been prepared to date; thus, no specific citations will be provided.

**2.** The Handbook does not differentiate between levels of managers within a given restaurant.

**3.** As discussed, *infra*, the defendant offered only this testimony regarding a retaliation policy and did not offer any evidence relating to the education of employees about the policy or the enforcement of the policy.

*Dental Ass'n,* 527 U.S. 526, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999).

### 1. Punitive Damages Under Kolstad

In *Kolstad,* the Supreme Court relied on the Restatement (Second) of Agency and the Restatement (Second) of Torts, which establish that a master or other principal may be liable for punitive damages based on the conduct of an employee or agent where, *inter alia,* " 'the agent was employed in a managerial capacity and was acting in the scope of employment.' " *Id.,* at 542, 119 S.Ct. at 2128 (quoting RESTATEMENT (SECOND) OF AGENCY § 217C (1957); RESTATEMENT (SECOND) OF TORTS § 909 (1979)).

The Court did not establish a standard for determining when an employee is acting in a "managerial capacity" but stated that "an employee must be important, but perhaps need not be the employer's top management, officers, or directors." *Id.,* at 543, 119 S.Ct. at 2128 (internal quotation marks omitted). " 'In making this determination, the court should review the type of authority that the employer has given to the employee, the amount of discretion that the employee has in what is done and how it is accomplished.' " *Id.* (quoting 1 L. Schlueter & K. Redden, Punitive Damages, § 4.4(B)(2)(a), p. 181 (3d ed.1995)); *see also Bruso v. United Airlines, Inc.,* 239 F.3d 848, 860 (7th Cir.2001) (holding that a jury could find that a departmental manager who oversaw the cleaning and provisioning of planes at O'Hare International Airport, supervised numerous employees, assigned work, mediated disputes, and investigated allegations of wrongdoing was working in a "managerial capacity," even though he had to seek approval from a superior prior to demoting an employee); *Romano v. U–Haul Int'l,* 233 F.3d 655, 669–70 (1st Cir.2000) (finding that the president of a subsidiary company was also a manager of the parent company such that his actions could subject the parent company to punitive damages); *Ogden v. Wax Works, Inc.,* 214 F.3d 999, 1010 (8th Cir.2000) (finding that a district manager who supervised several stores and scheduled and conducted performance evaluations was working in a "managerial capacity"); *Lowery v. Circuit City Stores, Inc.,* 206 F.3d 431, 444 (4th Cir.2000) (finding that a department manager who managed the department responsible for recruiting non-managerial employees and who had the authority to hire employees in her department and to organize her department at her discretion could be found to be working in a "managerial capacity"); *Deffenbaugh–Williams v. Wal–Mart Stores, Inc.,* 188 F.3d 278, 285 (5th Cir. 1999) (finding that an assistant manager responsible for the shoe and jewelry departments in six stores could be found to be working in a "managerial capacity").

■ In *Kolstad,* the Court also stated: [I]n the punitive damages context, an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's good faith efforts to comply with Title VII .... [G]iving punitive damages protection to employers who make good-faith efforts to prevent discrimination in the workplace accomplishes Title VII's objective of motivating employers to detect and deter Title VII violations.

*Kolstad,* 527 U.S. at 545–46, 119 S.Ct. at 2129 (internal citations and quotation marks omitted). The Court did not establish guidelines for determining when an employer has engaged in such "good faith compliance" but left the matter for the lower courts to determine. The courts of appeals that have addressed the issue have found that the promulgation of an anti-discrimination policy, while relevant, is not sufficient by itself to establish good faith compliance with Title VII. *See, e.g., Bruso,*

239 F.3d at 858; *Romano*, 233 F.3d at 670; *Cadena v. The Pacesetter Corp.*, 224 F.3d 1203, 1210 (10th Cir.2000). As the First Circuit found in *Romano*, the "defendant must also show that efforts have been made to implement its anti-discrimination policy, through education of its employees and active enforcement of its mandate." 233 F.3d at 670; *see also Cadena*, 224 F.3d at 1210; *Deffenbaugh–Williams*, 188 F.3d at 286.

### 2. Punitive Damages and the Faragher Affirmative Defense

■■■ The defendant has moved for judgment as a matter of law on the ground that the jury could not have found that the defendant established its affirmative defense[4] to the claim of hostile environment sexual harassment and still award punitive damages on the retaliation claim in light of *Kolstad*.[5] The defendant argues that "the jury necessarily found that Cracker Barrel made a 'good faith effort to comply with Title VII' when it determined Cracker Barrel proved its affirmative defense" to hostile environment sexual harassment. (Docket No. 115 at 4)

As an initial matter, the court must determine which party should bear the burden of proving or disproving good-faith compliance with Title VII, a question that was not addressed by the Supreme Court in *Kolstad*. The Sixth Circuit has not commented on this issue, so the court must look to other courts of appeals for guidance. The Fifth and Ninth Circuits have held that good-faith compliance is an affirmative defense to vicarious liability for punitive damages. *See Passantino*, 212 F.3d at 516; *Deffenbaugh–Williams*, 188 F.3d at 286 (discussing "the good-faith de-

4. In *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), the Supreme Court established that an employer may raise an affirmative defense to vicarious liability for hostile environment sexual harassment by a supervisor where there has been no tangible job detriment to the plaintiff. 524 U.S. at 807, 118 S.Ct. at 2292–3. "The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.*, at 807, 118 S.Ct. at 2293.

5. The defendant also claims that the plaintiff failed to show that "a managerial agent with power to set company policy acted with malice or disregard for her federal rights." (Docket No. 115 at 3) Again, however, the instructions stated that the defendant acted through its district, general, associate, and assistant managers, as long as they were acting within the scope of their authority. The plaintiff's uncontroverted testimony established that Hooper, as an assistant manager, was one of the managers responsible for scheduling shifts, assigning work, and supervising servers during their shifts. Hooper admitted that he recommended the plaintiff's termination and signed the termination notice.

Further, in *Kolstad*, the Supreme Court did not limit "managerial capacity" to individuals who had the power to set company policy. The defendant relies solely on the opinion of another district court opinion to establish this rule. (Docket No. 115 at 3) (quoting *Steinhoff v. Upriver Restaurant Joint Venture*, 117 F.Supp.2d 598, 605 (E.D.Ky.2000)). This court must look to the instructions on the law that were read to the jury. The jury was not instructed to make a separate determination of whether an employee acting in a "managerial capacity" retaliated against the plaintiff with malice or recklessness. The jury was only asked to determine whether the defendant engaged in such actions, acting through its several levels of managers.

The defendant did not object to this instruction at trial and does not object to the instructions in this motion. Thus, the court finds that the defendant has waived this argument, and the court will only consider whether the jury's finding that the defendant proved its affirmative defense to sexual harassment precludes, as a matter of law, an award of punitive damages on the claim of retaliation.

fense"). The Fourth Circuit and the Eighth Circuit have defined good-faith compliance as an "exception" to vicarious liability, "whereby an employer may escape vicarious liability for the discriminatory employment decisions of managerial agents where those decisions are contrary to the employer's 'good faith efforts to comply with Title VII.'" *Ogden*, 214 F.3d at 1009 (quoting *Kolstad*, 527 U.S. at 545, 119 S.Ct. at 2129); *Lowery*, 206 F.3d at 445. While not determining whether good faith compliance is an affirmative defense or an exception to the rule of vicarious liability, the First Circuit agreed that the "defendant ... is responsible for showing good faith efforts to comply with the requirements of Title VII." *Romano*, 233 F.3d at 670. Similarly, the Seventh Circuit has found that the defendant bears the burden of demonstrating good-faith compliance. *See Cooke v. Stefani Mgmt. Servs., Inc.*, 2001 WL 503600 (7th Cir. 2001) ("An employer may escape punitive damages liability for its manager's acts, however, if it can demonstrate a good faith attempt to establish and enforce an anti-discrimination policy.").

■ Based on these cases, the court finds that the defendant bears the burden of asserting and proving good-faith compliance with Title VII as a means to avoid vicarious liability for punitive damages. In this case, the defendant never raised the issue of its alleged good-faith compliance with Title VII in relation to punitive damages. The defendant did not object to the jury instructions or to the verdict form, neither of which contained any reference to good-faith compliance.

Nonetheless, the defendant argues that it is entitled to judgment as a matter of law because the jury found that it had proved its affirmative defense to the hostile environment sexual harassment claim. The defendant argues that this finding encompasses a finding of good-faith compli-

ance with Title VII, thereby precluding the award of punitive damages on the plaintiff's retaliation claim. On review of the record, the court finds that the jury's verdict did not include findings of fact sufficient to establish a finding that the defendant proved good faith compliance with Title VII in relation to the retaliation claim.

Title VII clearly prohibits more than sexual harassment. *See* 42 U.S.C. § 2000e–2 (2000). Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin ...." *Id.* Under 42 U.S.C. § 1981a(b)(1), punitive damages may be awarded for intentional discrimination "if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." Thus, punitive damages are also available under Title VII for more than just sexual harassment.

As a result, the existence and enforcement of a sexual harassment policy does not, by itself, demonstrate good-faith compliance with Title VII. The good-faith compliance must relate to the specific claim being raised under Title VII. In this case, the plaintiff was awarded punitive damages on her claim of retaliation. The defendant argues that it is entitled to judgment as a matter of law because the jury's finding that the defendant proved its affirmative defense to the sexual harassment claim necessarily proved that it demonstrated good-faith compliance with Title VII.

The jury was given the following instruction on the defendant's affirmative defense to the hostile environment sexual harassment claim:

The defendant has raised an affirmative defense to the plaintiff's claim of hostile environment sexual harassment. If you find that the plaintiff has met her burden of proving the elements of her claim by a preponderance of the evidence, then you must consider whether the defendant has proven its affirmative defense.

The defendant has the burden of establishing an affirmative defense by a preponderance of the evidence. If you determine that the defendant has met this burden, then your verdict must be for the defendant on that claim. If you determine that the plaintiff has established the essential elements of her claim and the defendant has not established its affirmative defense, then you must find for the plaintiff on that claim.

In order to prevail on the affirmative defense, the defendant must prove each of the following facts by a preponderance of the evidence:

First: That the defendant exercised reasonable care to prevent and correct promptly any sexually harassing behavior in the workplace; and

Second: Either (1) the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the defendant to avoid or correct the harm [or otherwise failed to exercise reasonable care to avoid harm]; or (2) that, if the plaintiff did take advantage of preventive or corrective opportunities, the defendant responded by taking reasonable and prompt corrective action.

Ordinarily, proof of the following facts will suffice to establish the exercise of "reasonable care" by the employer: (a) that the employer had promulgated an explicit policy against sexual harassment in the workplace; (b) that such policy was fully communicated to its employees; and (c) that such policy provided a reasonable avenue for the plaintiff to make a complaint to higher management. The mere existence of an anti-harassment policy is not determinative that an employer has met the reasonable care standard. The employer's policy and procedures are simply facts to be considered in conjunction with others. You must determine whether the policy was being implemented and, if so, whether it was a reasonable and effective means of meeting the employer's duty to prevent and to correct sexual harassment.

Conversely, proof that an employee did not follow a complaint procedure provided by the employer will ordinarily suffice to establish that the employee "unreasonably failed" to take advantage of a corrective opportunity. Failing to report harassment is not always unreasonable. You may find that the employee had a number of valid reasons for not reporting the harassment and, thus, acted reasonably. Thus, if you find that the plaintiff failed to report the sexual harassment, then you must also decide whether that failure was reasonable or unreasonable.

(Docket No. 103 at 21–22)

At trial, several witnesses testified regarding the defendant's sexual harassment policy, which was included in the employee handbook and introduced into evidence. The policy makes no reference to retaliation for reporting or objecting to sexual harassment. Several witnesses also testified that the defendant trained its managers about sexual harassment and the sexual harassment policy, but there was no mention that the sexual harassment training included the issue of retaliation for

reporting or objecting to sexual harassment. The defendant did not offer any evidence that managers were trained regarding retaliation or that any specific efforts were used to prevent or to address complaints of retaliation. The defendant did not offer any evidence relating to the prevention of retaliation as a result of other complaints of sexual harassment.

Only two of the defendant's witnesses offered any testimony relating to retaliation against employees. Bob Miller, the general manager, testified that employees would not be retaliated against for utilizing the defendant's Open Door Policy, which encouraged employees to bring any kind of complaint or comment to one of the managers. Katherine O'Rourke, assistant manager, testified that she knew that a person could complain about sexual harassment without being retaliated against. However, she did not state that this was part of the defendant's policies or training, only that she was generally aware that a person had such a right.

The plaintiff did offer some testimony that retaliation occurred as a result of complaints, which the jury could have found to show that the defendant did not make good-faith efforts to enforce a retaliation policy. One of the plaintiff's coworkers, Alexandra Donnan, testified that she complained about actions of Katherine O'Rourke to Bob Miller and that her subsequent evaluation went down. Although this complaint did not relate to sexual harassment, a reasonable jury could consider this event as evidence of the defendant's managers' reactions to complaints.

The jury instruction on the affirmative defense, given without objection, was clearly limited to the issue of hostile environment sexual harassment. The evidence presented at trial was almost wholly limited to the defendant's sexual harassment policy. The sexual harassment policy itself does not contain any reference to retaliation or the prevention thereof. The plaintiff offered some evidence that employees other than the plaintiff were retaliated against for registering complaints with management. On review of the record, the court cannot find, as a matter of law, that the two policies were so intertwined that the jury's finding of a sexual harassment policy included a finding of a retaliation policy. Even if such a policy did exist, there was not sufficient evidence presented at trial for the court to find that a reasonable jury could only conclude that the policy was enforced in good faith. In fact, there was no evidence offered to support a finding that the defendant made a good-faith effort to implement and to enforce a retaliation policy.

Interpreting the evidence in the light most favorable to the plaintiff, the court finds that a reasonable jury could find that the defendant took reasonable steps to prevent and to correct sexual harassment in the workplace but that the defendant did not demonstrate good-faith compliance with Title VII in its efforts to prevent and to correct retaliation for making complaints of or for objecting to sexual harassment. Because the court cannot conclude that proof of the affirmative defense to sexual harassment precludes an award of punitive damages on a claim of retaliation, the court cannot find that the jury's verdict requires judgment as a matter of law in favor of the defendant.

### III. CONCLUSION

The defendant has not objected and does not object to the jury instructions as they were given at the trial in this matter. Under those instructions, the court finds that a reasonable jury could find in favor of the plaintiff on her claims of retaliation and award punitive damages against the defendant. The defendant has not proven, as a matter of law, that the jury's finding

that the defendant proved its affirmative defense to the hostile environment sexual harassment claim necessarily requires a finding that the defendant engaged in good-faith compliance with Title VII in relation to the claim of retaliation. Therefore, the defendant is not entitled to judgment as a matter of law on the issue of punitive damages on the retaliation claim. The defendant's motion is **DENIED**.

It is so Ordered.