**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**August 8, 2011**

**UNITED STATES COURT OF APPEALS**

**Elisabeth A. Shumaker**
**Clerk of Court**

**TENTH CIRCUIT**

CLEARONE COMMUNICATIONS,
INC., a Utah corporation,

      Plaintiff-Appellee,

v.

BIAMP SYSTEMS, an Oregon
corporation,

      Defendant-Appellant,

and

ANDREW CHIANG, an individual;
JUN YANG, an individual; LONNY
BOWERS; WIDEBAND
SOLUTIONS, INC., a Massachusetts
corporation; VERSATILE DSP, a
Massachusetts corporation,

      Defendants.

Nos. 09-4097, 10-4090 & 10-4168

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 2:07-CV-00037-TC-DN)**

LaMar F. Jost, (Marsha M. Piccone and Christopher P. Montville, with him on the
briefs) of Wheeler Trigg O'Donnell LLP, Denver, Colorado, for Defendant-
Appellant Biamp Systems.

James E. Magleby, (Christine T. Greenwood, Christopher M. Von Maack, and
Jennifer Fraser Parrish, with him on the briefs), of Magleby & Greenwood, P.C.,
Salt Lake City, Utah, for Plaintiff-Appellee.

Before **BRISCOE,** Chief Judge, **HOLLOWAY** and **HOLMES**, Circuit Judges.

**BRISCOE**, Chief Judge.

Plaintiff ClearOne Communications, Inc. (ClearOne) filed suit against defendant Biamp Systems (Biamp) alleging that Biamp misappropriated ClearOne's trade secrets by licensing from another company, WideBand Solutions, Inc. (WideBand), products that illegally incorporated those trade secrets. After a jury trial, the jury found in ClearOne's favor on all of its claims against Biamp. The district court, in accordance with the jury's findings, assessed damages for lost profits and unjust enrichment, awarded ClearOne exemplary damages, and also ordered Biamp to pay ClearOne's attorneys' fees and nontaxable expenses. Biamp now appeals. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm all aspects of the district court's judgment except for the lost profits and exemplary damages awards. As to those portions of the judgment, we reverse and remand with directions to enter judgment against Biamp for $956,000 in lost profits jointly and severally with the other defendants, and $853,334 in exemplary damages individually.

I

*A. Factual background*

*ClearOne's purchase and ownership of the Honeybee Code*

2

ClearOne is a Utah corporation with its principal offices in Utah. At the time of its inception in the early 1980's, ClearOne, which was then known as Gentner Communications Corporation (Gentner), manufactured and sold equipment exclusively for the radio broadcasting market. In the early 1990's, Gentner sought to expand its product offerings by entering the audio teleconferencing equipment market. Gentner determined that, in order to enter this market successfully, it had to first develop a method of dealing with acoustic echo, which occurs when sound from a loudspeaker is picked up by a microphone in the same room. Accordingly, in 1991, Gentner assigned a team of its engineers to develop an acoustic echo cancellation (AEC) process using a special computer chip called a digital signal processor (DSP). The team first created an algorithm to accomplish the task of AEC. The team then programmed the algorithm into the DSP chips. That process involved translating the algorithm into "high-level" computer programming language called source code, which is readable by humans. The source code was then converted into a "lower-level" programming language called assembly code, and finally into object code, which is a sequence of binary number instructions.

Gentner's engineering team produced its first AEC product approximately two years later. That product, however, did not perform well in the market. The engineering team thus continued to work on AEC technology and in 1997 completed the Gentner Distributed Echo Cancellation (DEC) algorithm that was

3

subsequently utilized in a line of AEC products called Audio Perfect. The Audio Perfect line of products helped Gentner capture the largest market share in the commercial audio market.

In the spring of 2000, Gentner began investigating the possibility of purchasing the assets, including the intellectual property, of a company called ClearOne, Inc. (Old ClearOne). Gentner was interested in obtaining a videoconferencing computer program, nicknamed Killerbee, that Old ClearOne was developing. Gentner was also wanting to expand into the tabletop teleconferencing market and was aware that Old ClearOne had developed and was close to marketing a portable tabletop teleconferencing phone, the Old ClearOne speakerphone. The Old ClearOne speakerphone utilized an internally developed AEC algorithm nicknamed the Honeybee Code. By purchasing the Honeybee Code, Gentner would gain immediate entry into the tabletop market and would not have to wait for its engineering team to develop a unique AEC product for the tabletop market.

Gentner's vice president of technology, Tracy Bathurst, was assigned to perform due diligence on Old ClearOne's products prior to Gentner entering into a purchase agreement with Old ClearOne. Bathurst traveled to Old ClearOne's offices in May 2000, met with each of Old ClearOne's engineers, including defendant Yang, and reviewed the source code for both the Killerbee and Honeybee products.

4

In July 2000, Gentner entered into an asset purchase agreement with Old ClearOne, pursuant to which Gentner, in exchange for approximately $3,758,000, purchased most of Old ClearOne's assets, including its intellectual property and its corporate name. As part of the asset purchase, Gentner kept Old ClearOne's Massachusetts office open and employed some of Old ClearOne's engineers, including Yang, to continue work on the Honeybee and Killerbee projects. In order to protect the confidentiality of the Honeybee and Killerbee source codes, Gentner required Yang and the other Old ClearOne employees to sign confidentiality and noncompetition and invention assignment agreements.

Gentner, which changed its name to ClearOne following completion of the asset purchase agreement, subsequently attempted to market the Old ClearOne speakerphone. Sales, however, were disappointing. Consequently, in the summer of 2002, ClearOne removed the speakerphone from the market and destroyed its remaining speakerphone inventory. ClearOne in turn placed the Honeybee Code into its archive where it was available to its engineers for future use.

*Biamp and Echonology*

Biamp is a small, Oregon-based company that designs, manufactures, and sells commercial audio equipment, and thus competes directly with ClearOne in the commercial audio market. Prior to 2002, Biamp had licensed AEC technology from another company for use in its Voice Crafter acoustic echo canceller. By the spring of 2002, however, sales of the Voice Crafter were fading. Because

5

Biamp did not own the rights to, and thus could not modify, the AEC technology used in the Voice Crafter, and because it had not been able to develop internally its own AEC technology, Biamp began looking for other entities who could license AEC technology to Biamp.

In June 2002, Biamp was approached by defendant Lonny Bowers, who alleged that he represented a company called Echonology, L.L.C. (Echonology).[1] Lonny Bowers stated that Echonology was comprised of himself, Yang (who left his employment with ClearOne in the spring of 2001), and defendant Chiang, the former president and a shareholder of Old ClearOne. Lonny Bowers informed Biamp that Echonology was interested in providing Biamp with AEC technology.

The president of Biamp, Ralph Lockhart, subsequently exchanged e-mail messages with Chiang. Chiang informed Lockhart that Echonology's technologies concentrated in the areas of AEC and line echo cancellation. Lockhart in turn asked Chiang to submit to him any materials that could provide Biamp with a better insight into Echonology and the work its shareholders had previously performed at ClearOne or Old ClearOne. Chiang provided Lockhart with a resume that indicated that Chiang, while at Old ClearOne, had successfully developed an award-winning audio conferencing phone (the Old ClearOne speakerphone). Chiang further provided Lockhart with a resume for Yang

_____

[1] According to the record on appeal, Echonology was never actually incorporated.

6

indicating that Yang had experience with AEC and line echo cancellation algorithm development.

In July 2002, Lonny Bowers, Chiang and Yang traveled to Oregon and met with Lockhart and Matthew Czyzewski, Biamp's vice president of engineering. The two Biamp representatives informed Lonny Bowers, Chiang and Yang that Biamp was wanting to obtain AEC technology. Chiang and Yang in turn discussed their involvement with Old ClearOne's AEC technology.

Biamp subsequently prepared and submitted to Lonny Bowers, Chiang and Yang a specification outlining the criteria it wanted an AEC algorithm to meet. In response, Lonny Bowers, Chiang and Yang provided Biamp with a proposal for developing an AEC algorithm that would meet Biamp's specifications. The proposal provided that programming of the algorithm would take approximately four months. The proposal outlined two alternative pricing options: a price of $400,000 for the object code alone; or a price of $650,000 for both the object and source code. Biamp ultimately rejected the proposal, primarily due to cost concerns.

*ClearOne's license agreement with Biamp*

After rejecting the proposal submitted by Lonny Bowers, Chiang and Yang, Biamp continued to look elsewhere for AEC technology. Ultimately, in late 2002, Biamp agreed to license from ClearOne the Gentner DEC algorithm. As part of the license agreement, ClearOne modified the Gentner DEC algorithm so that it

7

would function on the computer chip utilized in Biamp's hardware. ClearOne did not provide Biamp with the source code for the modified algorithm. Instead, ClearOne gave Biamp only a disk containing the object code for the modified algorithm.

*WideBand*

In 2003, Lonny Bowers, Chiang and Yang formed WideBand, a Massachusetts corporation. Lonny Bowers served as president of the company, Chiang was vice president, and Yang served as treasurer and chief technology officer. Lonny Bowers raised capital for WideBand by telling potential investors that Yang played a significant role in the development of Old ClearOne's and ClearOne's AEC technology.

Yang proceeded to produce for WideBand an AEC algorithm and related software called FC101. WideBand began marketing that product in early 2004. Yang in turn used the FC101 software to create a second AEC algorithm and related software product called WC301. The WC301 product was placed on the market in the third quarter of 2004.

*WideBand and Biamp*

In March 2004, WideBand met with Biamp and proposed that it would provide Biamp with a software license for AEC technology at a significantly lower price than Biamp was paying ClearOne to license the modified Gentner DEC algorithm. Biamp agreed to the proposal and the parties entered into a

8

written licensing agreement. In February 2005, WideBand provided Biamp with the final version of the anticipated AEC software. Biamp began shipping to consumers its AEC-related product incorporating the WideBand AEC technology, called the AEC2W card, that same month.

In approximately mid-2005, Biamp and WideBand discussed the possibility of Biamp purchasing WideBand's assets, including both the source and object codes for the AEC technology that Biamp was licensing from WideBand. As part of those discussions, on September 5, 2005, Lonny Bowers sent an e-mail to Czyzewski at Biamp noting that "this algorithm [i.e., the algorithm provided by WideBand to Biamp] has functioned successfully in the market for approximately six years," "[d]ating back to the ClearOne, Inc. phone . . . ." JA at T2749. Ultimately, Biamp chose not to acquire WideBand, and instead began internally developing its own AEC algorithm. Biamp ultimately produced its own working AEC algorithm and began selling products incorporating that technology in the fall of 2006.

*ClearOne's discovery of Biamp's relationship with WideBand*

At approximately the same time that Biamp began licensing AEC technology from WideBand, it ceased licensing the modified Gentner DEC algorithm from ClearOne. After learning that Yang and Chiang were associated with WideBand, ClearOne began to investigate whether WideBand had used any of ClearOne's proprietary technology. ClearOne hired an independent engineer,

9

purchased a Biamp AEC product, and had the independent engineer extract the object code from that product. Following completion of the engineer's work, ClearOne filed this suit.

## B. Procedural background

### ClearOne's complaint

On January 3, 2007, ClearOne filed suit in Utah state court against Biamp, as well as WideBand, Lonny Bowers, Chiang, Yang, and a Yang-owned company called Versatile DSP (collectively the WideBand defendants), asserting, in pertinent part, causes of action for threatened or future misappropriation of trade secrets under Utah's Uniform Trade Secrets Act (UUTSA). On January 19, 2007, some of the WideBand defendants removed the case to federal district court on the basis of diversity jurisdiction. ClearOne subsequently filed four amendments to its complaint. Those amendments included the addition of a claim against Biamp for misappropriation of trade secrets.

### Biamp's motion to dismiss the misappropriation claims

Biamp moved to dismiss ClearOne's misappropriation of trade secrets claim pursuant to Fed. R. Civ. P. 12(b)(6).[2] In that motion, Biamp argued that it

---

[2] Biamp initially moved to dismiss ClearOne's original complaint, and later moved to dismiss the first amended complaint. By the time the district court ruled on the motions, ClearOne had filed its third amended complaint. The district court noted, however, that "the causes of action" asserted by ClearOne against Biamp had not changed, and thus focused on the allegations contained in the third amended complaint. JA at D5654 n.1.

lacked knowledge of the alleged trade secret because it could not read the object code provided to it by WideBand. Biamp also argued that, because of its own public distribution of that object code, the object code could not, as a matter of law, qualify as a trade secret under the UUTSA. The district court denied Biamp's motion to dismiss on December 13, 2007.

*Trial proceedings*

On October 20, 2008, ClearOne proceeded to trial against Biamp and the WideBand defendants on its trade secret misappropriation claims. After hearing eleven days of evidence, the jury returned a special verdict finding in favor of ClearOne on all of its claims, including its claims of trade secret misappropriation against Biamp. The jury further found that Biamp acted willfully and maliciously in misappropriating ClearOne's trade secrets. The jury assessed lost-profits damages against Biamp in the amount of $956,000. The jury also assessed lost-profits damages in that same amount against the WideBand defendants. Lastly, the jury assessed unjust enrichment damages against Biamp in the amount of $694,000.

*Post-trial modification of damage award and entry of final judgment*

On April 20, 2009, the district court issued an order and memorandum decision addressing various post-trial matters, including ClearOne's motion for exemplary damages and entry of final judgment. The district court concluded, in pertinent part, that (a) "all of the Defendants [we]re jointly and severally liable

11

for the $1,912,000.00 in lost profits shown at trial" by ClearOne's damages expert, Richard Hoffman, id. at D17563, and (b) an award of $1,012,666.00 in exemplary damages against Biamp was appropriate (i.e.,"an amount equal to the sum of its compensatory and unjust enrichment damages"), id. at D17561.

On April 21, 2009, the district court entered judgment in favor of ClearOne and against the defendants. The judgment stated, in pertinent part:

> IT IS ORDERED AND ADJUDGED
>
> that judgment be entered in favor of the plaintiff against . . . Biamp Systems Corp. in the amount of $1,912,000.00 (jointly and severally with all six of the Defendants) and individually liable for $694,000.00 for unjust enrichment and $1,012,666.00 in exemplary damages.

Id. at D17588.

*Biamp's Rule 59(e) motion*

On May 5, 2009, Biamp filed a motion to amend the judgment pursuant to Fed. R. Civ. P. 59(e). In that motion, Biamp argued that "[t]he jury's answers on the Special Verdict forms were consistent with a decision to assess a total of $9[56],000 in lost-profits damages against all Defendants, and the [district court] was constrained to enter judgment in that amount consistent with the jury's verdict." Id. at D17655. Biamp further argued that "even if the [district court] did believe that the jury intended to award a total of $1,[912],000 in [lost-profits] damages, there would still be no basis for 'correcting' the award," and "[t]he only available recourse in that event would be a new trial." Id. The district court

12

denied Biamp's Rule 59(e) motion, concluding that "the evidence and law support[ed]" its damage award.  Id. at D19880.

*Attorneys' fees and related nontaxable expenses*

On May 12, 2009, ClearOne filed a motion for an award of attorneys' fees and related nontaxable expenses pursuant to the UUTSA arguing that, because "[t]he jury determined that Defendants' misappropriation of ClearOne's trade secrets . . . was willful and malicious," the district court should exercise its discretion and impose ClearOne's attorneys' fees and related nontaxable expenses against defendants.  Id. at D18132.  The magistrate judge assigned to the case recommended that the district court impose fees and costs in the amount of $983,879.90 against all defendants, including Biamp, jointly and severally, and $118,025.00 against Biamp alone.  The district court reviewed the magistrate judge's report de novo, concluded that the magistrate judge properly determined the amount of ClearOne's recoverable attorneys' fees and related nontaxable expenses, and adopted the magistrate judge's report "as the court's own order." Id. at D22713.

II

Biamp has filed three appeals, Nos. 09-4097, 10-4090, and 10-4168, asserting five general issues: (1) whether the district court, in the context of denying Biamp's motion to dismiss, erred in holding that the UUTSA did not require Biamp's knowledge of ClearOne's trade secret; (2) whether the district

13

court erred in admitting at trial expert witness testimony from Robert Knudsen, a forensic computer examiner employed by Global Digital Forensics; (3) whether the district court erred in denying Biamp's motion to amend the final judgment and reduce the actual damages award; (4) whether the district court's award of exemplary damages was supported by substantial evidence; and (5) whether the district court's award of attorneys' fees and costs against Biamp should be reversed. We address each of these arguments in turn.

## A. *Denial of Biamp's motion to dismiss*

In its first issue on appeal, Biamp contends the district court erred in denying its motion to dismiss ClearOne's misappropriation of trade secrets claim. Generally speaking, we review de novo a district court's ruling on a motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Gee v. Pacheco, 627 F.3d 1178, 1183 (10th Cir. 2010).

We have not previously addressed whether a defendant may appeal the denial of a motion to dismiss for failure to state a claim after the plaintiff has successfully prevailed at trial on the claim at issue. We have, however, addressed a similar question in the context of the denial of a motion for summary judgment. In Whalen v. Unit Rig, Inc., we held that "summary judgment was not intended to be a bomb planted within the litigation at its early stages and exploded on appeal." 974 F.2d 1248, 1251 (10th Cir. 1992) (citation omitted). Thus, we held, "even if summary judgment [is] erroneously denied, the proper redress [following

14

trial] would not be through appeal of that denial but through subsequent motions for judgment as a matter of law . . . and appellate review of those motions if they were denied." Id.

We note that the Fifth Circuit has addressed the precise issue we now face and has held that a defendant may not, after the plaintiff has prevailed at trial on a particular claim, appeal the pretrial denial of a Rule 12(b)(6) motion to dismiss that claim. In Bennett v. Pippin, the Fifth Circuit concluded that "[w]hen a plaintiff has prevailed after a full trial on the merits, a district court's denial of a [motion to dismiss] becomes moot." 74 F.3d 578, 585 (5th Cir. 1996). This is because, the court explained, "[a]fter a trial on the merits, the sufficiency of the allegations in the complaint is irrelevant": the plaintiff "has proved, not merely alleged, facts sufficient to support relief." Id. The Fifth Circuit further held that "[t]he arguments for not considering an appeal from a denial of a Rule 12(b)(6) dismissal after a trial on the merits are stronger than those for not considering a refusal to dismiss under [Federal Rule of Civil Procedure] 56, given the ease with which a plaintiff may amend a complaint after judgment in order to conform to the evidence." Id. (citing Fed. R. Civ. P. 15(b)).

We are persuaded by the Fifth Circuit's reasoning and hold that, as a general rule, a defendant may not, after a plaintiff has prevailed at trial, appeal from the pretrial denial of a Rule 12(b)(6) motion to dismiss, but must instead challenge the legal sufficiency of the plaintiff's claim through a motion for

15

judgment as a matter of law. Although in this case Biamp did file a motion for judgment as a matter of law, it did not reassert in that motion the arguments it made in its Rule 12(b)(6) motion — nor does Biamp appeal the district court's denial of its motion for judgment as a matter of law. Consequently, Biamp's appeal of the district court's denial of its motion to dismiss is not properly before us.

At oral argument, Biamp asserted that the Fifth Circuit's decision in Bennett was inconsistent with the law in this circuit. In making its argument, Biamp correctly noted that we have created an exception to our holding in Whalen. We have held that while a party may not appeal the denial of a summary judgment motion "based on factual disputes . . . , when the material facts are not in dispute and the denial of summary judgment is based on the interpretation of a purely legal question, such a decision is appealable after final judgment." Haberman v. Hartford Ins. Grp., 443 F.3d 1257, 1264 (10th Cir. 2006). Applying this exception, we have adjudicated post-trial appeals from denials of summary judgment motions in cases where the district court has determined liability under an insurance policy, id., defined the scope of federal safety statutes, Wilson v. Union Pac. R.R. Co., 56 F.3d 1226, 1229 (10th Cir. 1995), and decided whether collateral estoppel precludes a plaintiff from filing a breach of contract claim in federal court, Ruyle v. Cont'l Oil Co., 44 F.3d 837, 841-42 (10th Cir. 1994).

Biamp argues that our rulings in these cases mandate the recognition of a

16

similar exception for post-trial appeals from the denial of Rule 12(b)(6) motions to dismiss. More specifically, Biamp contends that a defendant should be allowed, post-trial, to appeal the pretrial denial of a Rule 12(b)(6) motion if the denial was based on the resolution of a purely legal question. We find it unnecessary to decide whether to recognize such an exception here because, as we will explain, the district court's denial of Biamp's motion to dismiss was based largely on its conclusion that additional factual development was necessary, and Biamp does not seek in this appeal to challenge the sole legal conclusion reached by the district court in denying the motion to dismiss.

In its motion to dismiss, Biamp alleged that it possessed only unreadable object code provided to it by WideBand,[3] and that it in turn freely distributed that object code to its own customers. Based upon these allegations, Biamp asserted two distinct arguments in support of its motion to dismiss. First, Biamp argued that it "could not have obtained knowledge of ClearOne's trade secrets merely by

_____

[3] Biamp's motion to dismiss referred to the object code as the "WideBand Code." JA at D803. Notably, ClearOne's third amended complaint likewise employed the term "WideBand Code," but defined it more broadly to include "trade secret computer code, computer code architecture and digital audio processing algorithms for purposes of improving and maximizing the performance and clarity of audio conferencing . . . ." JA at D3810. In other words, ClearOne's third amended complaint did not distinguish between source and object code. Further, ClearOne's third amended complaint alleged simply that Biamp was in possession of the "WideBand Code," which in turn "contain[ed] the trade secrets that WideBand misappropriated from ClearOne . . . ." Id. at D3812. Thus, although Biamp argued in its motion to dismiss that it could not be liable because it possessed only the object code, that assertion effectively fell outside the scope of ClearOne's third amended complaint.

17

possessing the [object code] unless ClearOne c[ould] allege facts showing that Biamp could read the [object code] . . . ." JA at D810. In other words, Biamp argued that it lacked knowledge of the alleged trade secret because it could not read the object code provided to it by WideBand. Second, Biamp argued that, because of its own public distribution of the object code, the object code could not, as a matter of law, qualify as a trade secret under the UUTSA.

In denying Biamp's motion to dismiss, the district court briefly addressed both of Biamp's arguments. With respect to Biamp's argument that it could not read the object code, the district court concluded as a matter of law that "Biamp's understanding of the underlying [object] code and algorithm [wa]s unnecessary for misappropriation" because "[t]here [wa]s no requirement of comprehension of the trade secret to state a claim for misappropriation under the [UUTSA]." Id. at D5657-58. The district court also determined that, because ClearOne's third amended complaint alleged that "Biamp knew that WideBand derived the WideBand Code through improper means," it "need not consider whether Biamp actually understood the object code." Id. at D5659. Lastly, the district court emphasized that additional factual development was necessary, noting that it was "not appropriate for [it] to rule at this early stage that ClearOne ha[d] no viable claim for trade secret misappropriation against Biamp." Id. at D5659-60. As for Biamp's argument that the object code was not entitled to trade secret protection because it had been publicly distributed, the district court again emphasized the

18

necessity of additional factual development, stating simply: "At this early phase of litigation, the court will not rule that Biamp's public distribution of the WideBand Code—in object code format—destroys the trade secret protections of the underlying source code." Id. at D5660.

On appeal, Biamp now argues that "[t]he district court erred when, in denying [the] motion to dismiss, it held that Biamp could be liable for misappropriation of ClearOne's alleged trade secret information (the algorithms in the source code) when it never acquired or possessed knowledge of this information."[4] Aplt. Br. at 20 (internal citation omitted). The problem, however, is that the district court never issued such a holding. Instead, as we have already described, the district court held only that a defendant's comprehension of the trade secret at issue is not a necessary element of a misappropriation claim under

---

[4] In support of this argument, Biamp asserts that (a) "ClearOne identified its trade secret as the Honeybee algorithms, which were reflected in source code," and (b) "ClearOne . . . alleged, and no dispute exists, that Biamp possessed only undecipherable and publicly disseminated object code, not the algorithms in the source code . . . ." Aplt. Br. at 26. These assertions, however, are based upon ClearOne's answers to the WideBand defendants' interrogatories and the trial testimony of Biamp's president, Ralph Lockhart. Id. (citing JA at D4842, T4045). Notably, these assertions are contrary to the broad allegations contained in ClearOne's third amended complaint. As we have noted, the third amended complaint broadly defined the trade secrets at issue and drew no distinction between object and source code. Although Biamp argued that it could not be liable because it possessed only the Honeybee object code, that assertion fell outside the scope of the third amended complaint, which neither differentiated between object code and source code nor alleged the specific type of code that Biamp obtained from WideBand.

19

the UUTSA.[5]  Otherwise, the district court concluded, after reviewing the broad allegations in ClearOne's third amended complaint, that additional factual development was necessary before ClearOne's misappropriation claim against Biamp could be definitively resolved.  In other words, unlike the cases cited by Biamp, the district court's denial of Biamp's motion to dismiss was premised largely upon the district court's conclusion that additional factual development was necessary before it could definitively resolve ClearOne's misappropriation claim against Biamp.

*B.  Admission of expert witness testimony*

Biamp next argues that the district court erred in admitting at trial the testimony of ClearOne's computer forensic expert, Robert Knudsen, despite the fact that ClearOne (1) informed Biamp of its intent to call Knudsen "on the eve of trial" and (2) failed to comply with the disclosure requirements set forth in Rule 26(b) of the Federal Rules of Civil Procedure.  Aplt. Br. at 36-37.  We disagree with Biamp's assertion and affirm the district court's decision to permit Knudsen to testify.  In order to explain the basis for our decision, we will review how

---

[5] We find it unnecessary to address this narrow issue of law because, even if we were to disagree with the district court's interpretation of the UUTSA, we would not reverse the district court's judgment.  More specifically, we are not persuaded that, had the district court ruled in Biamp's favor on this issue of law, it would have, or should have, dismissed ClearOne's third amended complaint.  To the contrary, the allegations in ClearOne's third amended complaint were sufficiently broad to have survived Biamp's motion to dismiss.  Indeed, we believe this is precisely why the district court declined to dismiss ClearOne's misappropriation claims against Biamp prior to full discovery.

Knudsen became involved in this case and why ClearOne was so late in seeking the admission of his testimony.

*1) Procedural history*

On or about June 4, 2007, ClearOne filed a motion asking the district court to compel immediate backup imaging of the WideBand defendants' computers. ClearOne alleged that it had recently discovered "multiple transgressions of the [district court's previous] discovery orders" by the WideBand defendants, and it asked the court to order "backup mirror imaging . . . in order to preserve electronic evidence, protect ClearOne from further disadvantage, and ensure the integrity of the judicial system."  JA at D957.

In orders issued on June 12 and July 6, 2007, the district court granted ClearOne's motion in part and ordered that the WideBand defendants' computers be mirror imaged.[6]  The district court selected Global Digital Forensics (Global), a third-party computer forensics company, to perform the imaging of most of the WideBand defendants' computers.[7]  Under the terms of the district court's orders,

---

[6] The district court's order defined "mirror imaging" as the "creation of an exact duplicate of the entire hard drive [of a particular computer], . . . includ[ing] all the scattered clusters of the active and deleted files and the slack and free space . . . ."  JA at D1509.

[7] The district court directed Global to create mirror images of "Yang's lap top computer and home personal computer," "Chiang's lap top computer and home computer," and "all other WideBand computers except for the computers of . . . Lonny Bowers . . . and . . . David Sullivan."  JA at D1509.  The district court directed the WideBand defendants to "retain their own independent expert in the

(continued...)

21

ClearOne was not permitted to access the mirror images or data contained therein, or to have independent communication with Global regarding the imaging.

In its July 6, 2007 order, the district court also directed "[c]ounsel for ClearOne and [the] WideBand [d]efendants [to] meet and confer regarding a protocol for searching the mirror images created of the computers of [the] WideBand [d]efendants[,]" including "[t]he terms of keywords searches to be performed on the mirror images to identify relevant and responsive documents" and "[t]he format or means for other actions to be performed on the mirror images to identify relevant and responsive documents not easily located by keyword searches, such as source code documents or files." Id. at D2198. The court directed that the searches would "be performed by . . . Global" with respect to the mirror images it created. Id. at D2199.

ClearOne and the WideBand defendants subsequently engaged in a lengthy dispute regarding "the final form of the search protocol." Id. at D4015. This dispute lasted well into 2008 as ClearOne and the WideBand defendants continued filing motions asking the court to resolve their discovery battles. When the deadline passed for providing expert reports on February 15, 2008, Global had not begun searching the mirror images of the WideBand defendants' computers and ClearOne had not been granted access to the information contained in the

---

[7](...continued)
area of computer forensics to complete mirror imaging . . . of the computers and storage media used by Lonny Bowers . . . ." Id. at D2196.

mirror images. On April 1, 2008, the magistrate judge approved a search protocol to be utilized by Global in searching the mirror images of the WideBand defendants' computers. Id. at D6350-55.

Global's implementation of the court-approved search protocol was subsequently delayed by various circumstances, including the failure of the WideBand defendants' first counsel to provide the WideBand defendants' second counsel with the mirror images, the failure of the WideBand defendants' second counsel to timely pay the WideBand defendants' portion of Global's fees, the subsequent withdrawal of the WideBand defendants' second counsel, the WideBand defendants' attempt to sell the assets of WideBand, and the hiring and appearance of the WideBand defendants' third counsel. Id. at D11071. Global ultimately conducted its search in the summer of 2008. ClearOne did not receive access to any of the search "Hit Reports" produced by Global until September 12, 2008. Id. at D11079.

In late September 2008, ClearOne informed the district court of its intent to call as a witness at trial Robert Knudsen, the Global forensic analyst who created the mirror images and subsequently searched those mirror images using the search protocol approved by the magistrate judge, in order to authenticate and identify the source of certain electronic documents recovered from the WideBand defendants' computers. On October 2, 2008, Biamp and the WideBand defendants filed motions in limine seeking to exclude Knudsen's testimony on the

23

grounds that ClearOne failed to disclose him as an expert witness pursuant to Federal Rules of Civil Procedure 26(a) and 37(c). Following a hearing on this matter, the district court denied the motions, noting that Biamp and the WideBand defendants had "known about the presence of Global . . . in this case" and that ClearOne's intent to call Knudsen was "not that much of a surprise." Id. at T990-91. The district court did, however, order ClearOne to make Knudsen available for deposition by the defendants one day prior to the beginning of trial.

*2) Rules 26 and 37*

Under Rule 26(a), a party seeking to call an expert witness must provide the opposing party with a written report, prepared and signed by the expert witness, that outlines, in pertinent part, the opinions that will be expressed at trial by the expert witness, the facts or data considered by the expert witness in forming those opinions, the expert witness's qualifications, the cases in which the expert witness has testified within the last four years, and the compensation to be paid the expert witness for his work and testimony in the case. Fed. R. Civ. P. 26(a)(2)(B)(i)-(vii). Rule 26 thus "imposes a . . . duty to disclose information regarding expert testimony sufficiently in advance of trial so that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other expert witnesses." Fed. R. Civ. P. 26(a)(2) Advisory Committee's Note (1993).

As a general rule, when a party fails to comply with Rule 26(a)'s disclosure

24

requirements, that party "is not allowed to introduce the expert witness's testimony . . . at trial." Ciombeer v. Coop. Plus, Inc., 527 F.3d 635, 641 (7th Cir. 2008) (quoting Fed. R. Civ. P. 37(c)(1)); see also Sims v. Great Am. Life Ins. Co., 469 F.3d 870, 894-95 (10th Cir. 2006). Nonetheless, Federal Rule of Civil Procedure 37(c) permits district courts to admit expert witness testimony despite a party's failure to comply with Rule 26(a), as long as the violation is "justified or harmless." Fed. R. Civ. P. 37(c)(1). In determining whether the failure to comply with Rule 26(a) is justified or harmless, courts weigh four factors: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness. Jacobsen v. Deseret Book Co., 287 F.3d 936, 953 (10th Cir. 2002) (quotations and citation omitted).

We review a district court's refusal to exclude expert witness evidence for abuse of discretion. Id. A district court abuses its discretion in determining that a Rule 26(a) violation is "justified or harmless" when the court's decision is "based on an erroneous conclusion of law . . . or would result in fundamental unfairness in the trial of the case." Id. (quotations and citations omitted).

3) *The Jacobsen factors*

Biamp contends the district court abused its discretion in permitting ClearOne to call Knudsen as an expert witness because ClearOne (1) disclosed its

25

intent to call Knudsen one week prior to trial and four months after the expert discovery cutoff, and (2) failed to serve any of the Rule 26(a) disclosures, including the required expert report. We are not persuaded by these assertions, and we conclude, based on the four factors set forth in Jacobsen, that the district court did not abuse its discretion in permitting Knudsen to testify.

### a. Surprise and prejudice

Biamp claims the district court's admission of Knudsen's testimony was both surprising and prejudicial. According to Biamp, the court's ruling was a surprise because the trial date was only one week away and because the deadline for submitting expert reports had long since passed. Biamp also alleges that the court's ruling was prejudicial because, as a result of ClearOne's untimely disclosure, Biamp was unable to "impeach [Knudsen's] credentials, pursue countering evidence, or generally prepare for [its] defense." Aplt. Br. at 41 (citation omitted).

We reject these arguments. As noted by the district court, Biamp should not have been surprised by ClearOne's desire to call Knudsen to testify regarding the evidence found on the WideBand defendants' computers. ClearOne and the WideBand defendants had been engaged in discovery disputes regarding that evidence for over a year, and Biamp received notice of the parties' motions and the district court's rulings regarding these disputes. Biamp was therefore on notice that ClearOne was attempting to obtain evidence from the WideBand

26

defendants' computers and to introduce that evidence—if helpful to ClearOne—at trial. Consequently, Biamp should have anticipated the legitimate possibility that ClearOne would seek to introduce evidence obtained from the imaged computers and would need to call a Global representative in order to so.

In addition, any prejudice Biamp suffered from the lack of notice regarding Knudsen's testimony was insignificant and thus does not persuade us to reverse the district court's denial of Biamp's motion for a new trial. Knudsen did not testify at trial regarding a new or complicated scientific theory in support of ClearOne's case. Instead, Knudsen, as a computer forensic expert, simply testified as to what information was discovered on the mirrored images of the WideBand's defendants' computers— information that Biamp knew ClearOne was seeking. Thus, while Knudsen's expertise in computer forensics was relevant to his explaining to the jury how he found fragments of the Honeybee Code on the computers of the WideBand defendants, Biamp was (or should have been) sufficiently equipped to cross-examine him. We therefore conclude that this factor does not weigh in favor of reversing the district court's denial of Biamp's motion for a new trial.

### b. The ability of the party to cure prejudice

We also conclude that Biamp was able to cure some, if not all, of the prejudice it may have suffered as a result of the district court's ruling. For one, the district court required that ClearOne permit the defendants to depose Knudsen

27

one day prior to trial. Although Biamp certainly would have preferred to depose Knudsen earlier, it was nevertheless able to learn the substance of Knudsen's testimony prior to trial. In addition, because Knudsen merely testified as to the information he found on the imaged computers, the defendants were able to call their own witnesses—Yang and Chiang—to testify as to why memory fragments containing the Honeybee source code were found on their computers.

### c. Disruption of trial

The extent to which Knudsen's testimony disrupted the trial also weighs in favor of affirming the district court's order. Although Biamp claims that the admission of Knudsen testimony forced it to make a "last-minute scramble" at trial, Aplt. Br. at 41 (internal quotation marks omitted), the fact remains that ClearOne had been attempting to obtain evidence from the WideBand defendants' computers for months. Because Biamp should not have been surprised by ClearOne's attempt to introduce the evidence it finally obtained from the WideBand defendants' computers, we are not persuaded that Knudsen's testimony significantly disrupted the trial or Biamp's prepared defense of ClearOne's claims.

### d. Bad faith or willfulness

Finally, Biamp alleges that ClearOne acted willfully and in bad faith because it did not disclose its intent to call Knudsen as a witness until a week before trial. Biamp essentially argues that ClearOne's untimely disclosure in and

28

of itself is evidence of bad faith. We disagree with this argument because the trial record shows that ClearOne tried for over a year to obtain evidence from the mirror images of the WideBand defendants' computers. And when Global was finally able to conduct its court-approved search of the mirror images and make that information available to ClearOne, the deadline for expert reports had long since passed and the trial date was fast approaching. Given this fact, we conclude that ClearOne did not act willfully or in bad faith, despite its "late" disclosures.

In sum, after weighing the four factors set forth in Jacobsen, we conclude that the district court did not abuse its discretion in permitting ClearOne to call Knudsen as an expert witness. Because ClearOne, despite its best efforts, did not receive Global's imaging scans until shortly before trial, the district court reasonably concluded that ClearOne's failure to comply with Rule 26(a)'s disclosure requirements was justified.

*C. Denial of motion to amend judgment*

Biamp argues that the district court erred in denying its Rule 59(e) motion to amend the judgment. More specifically, Biamp argues that the final judgment should have been amended because the district court erred in (a) "rejecting the jury's $956,000 compensatory damages award and doubling it to $1,912,000," (b) "entering the compensatory damages award against Biamp and the WideBand defendants jointly and severally," and (c) "entering a duplicative $694,000 unjust enrichment award." Aplt. Br. at 46.

29

We review the denial of a Rule 59(e) motion for an abuse of discretion. Loughridge v. Chiles Power Supply Co., 431 F.3d 1268, 1275 (10th Cir. 2005). A district court abuses its discretion if it made a "clear error of judgment or exceeded the bounds of permissible choice in the circumstances. The abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." Id. (quotations omitted).

*1) Lost profits*

After being instructed to "assess [compensatory] damages for each claim separately and without regard to whether you have already awarded damages on another claim," JA at D12463, the jury found that Biamp was responsible for $956,000 of lost profits and that the WideBand defendants were responsible for $956,000 of lost profits. The district court, in its April 20, 2009 order granting ClearOne's motion for entry of final judgment, assumed that the jury intended to award a total of $1,912,000 of lost profits and entered judgment in that amount against all defendants jointly and severally. We conclude that the district court's interpretation of the jury's verdict amounted to an improper additur because, due to the wording of the verdict form, it is entirely possible that the jury intended to find that ClearOne suffered a total of $956,000 in lost profits.

Additur is the increase of a jury's award of damages. See Black's Law Dictionary (9th ed. 2009). Additur is prohibited in the federal courts "because it involves an unconstitutional reexamination of the jury verdict in violation of the

30

Seventh Amendment." Lyon Dev. Co. v. Bus. Men's Assurance Co. of Am., 76 F.3d 1118, 1125 (10th Cir. 1996). A court-imposed increase of damages encroaches on the defendant's right to a jury trial because it "is a bald addition of something which in no sense can be said to be included in the verdict." Dimick v. Schiedt, 293 U.S. 474, 486 (1935).

"Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." Id. Accordingly, a district court cannot enter a judgment that may exceed what the jury awarded. Where a jury verdict is ambiguous—where it is possible that the jury apportioned damages but it is also possible that the jury found a lower total damages figure—a judgment for the higher amount risks additur.

Several other circuits have refused to combine a jury's assessments of damages against individual defendants based on speculation that the jury improperly apportioned damages. See Midwest Precision Servs., Inc. v. PTM Indus. Corp., 887 F.2d 1128, 1139-40 (1st Cir. 1989) (rejecting the appellant's contention that the only rational construction of the jury's verdict was that the total damages equaled the sum of the damages assessed against two co-defendants); Faison v. Nationwide Mortg. Corp., 839 F.2d 680, 687 (D.C. Cir. 1987) ("[I]n actions against joint tortfeasors where the jury has erroneously apportioned damages, without stating an aggregate amount, apportionment of

31

damages should be omitted, and the verdict directed against all defendants for the largest sum found against any defendant."); Smith v. Updegraff, 744 F.2d 1354, 1368 (8th Cir. 1984) (rejecting the plaintiff's argument that the jury apportioned damages among the defendants and, thus, that the total damages was the sum of the damages awards because "[a]lthough this argument is persuasive, it ultimately amounts to mere speculation as to what the jury intended and this court cannot replace the jury's judgment with its own."); Ohio Valley Bank v. Greenebaum Sons Bank & Trust Co., 11 F.2d 87, 89 (4th Cir. 1926) (concluding that entering judgment against all defendants jointly and severally in the amount of the sum of the liability assessed against each defendant would violate the Seventh Amendment because the effect would be "to set aside the verdict of the jury and substitute for it the judgment of the court in establishing the extent of liability and would result in rendering judgment against each defendant in a sum greatly in excess of the verdict against that defendant as found by the jury."). But see G.A. Thompson & Co. v. Partridge, 636 F.2d 945, 963-64 (11th Cir. 1981) (determining that the jury's erroneous apportionment of damages was an error "so clear that it is not unlike a clerical error which the court can correct under Fed. R. Civ. P. 60(a)" and was not a "reexamin[ation] of the facts upon which the verdict was based"). If it is not absolutely clear that the jury apportioned damages, then the district court's assumption that the jury apportioned damages risks additur. Cf. City of Richmond v. Madison Mgmt. Gp., 918 F.2d 438, 461 (4th Cir. 1990)

32

(stating that aggregation of verdicts does not violate the right to a jury trial "only if the aggregated verdict is what the jury must have intended" (emphasis in original)).  In light of these cases, which we find persuasive, we hold that a district court cannot select an interpretation of an ambiguous verdict that possibly exceeds what the jury intended to award, even if it appears that the jury apportioned damages.

In this case, the jury's verdict is susceptible of two interpretations.  The special verdict form did not ask the jury to assess the total amount of ClearOne's lost profits.  Instead, it asked "what is the amount of compensatory damages to which ClearOne is entitled against [the WideBand defendants] for misappropriation of a trade secret, if any?," and "what is the amount of compensatory damages to which ClearOne is entitled against [Biamp], if any?"[8] Id. at D12477.  The jury, in response to these questions, stated that Biamp was liable for $956,000 in lost profits and that WideBand was also liable for $956,000

---

[8] Other circuits have noted that special verdict forms of this type make it difficult to determine whether the jury improperly apportioned damages.  See, e.g., City of Richmond, 918 F.2d at 461 ("[I]n cases where multiple defendants are being subjected to liability for a single injury, use of verdict forms that ask how much the jury awards against each defendant rather than how much the plaintiff has been damaged creates a risk of ambiguity."); Gagnon v. Ball, 696 F.2d 17, 19 n.2 (2d Cir. 1982) (noting the "inadvisability" of a procedure where the jury is asked "to answer separately as to each defendant the amount of compensatory damages to be recovered by the plaintiff" if the defendants are subject to liability for the same injury).  Biamp had proposed a special verdict form that would have asked the jury to find a single compensatory damages figure and then allocate fault by percentage among the defendants.  See JA at T4288-89.

33

in lost profits. The verdict form is thus ambiguous as to whether the jury intended to award a total of $1,912,000 in lost profits and allocated that amount between Biamp and WideBand, or whether the jury intended to award $956,000 in lost profits and found that Biamp and WideBand were both liable for that amount.

Although the district court's conclusion that the jury apportioned damages is plausible, it is not inescapable. The jury instructions and the verdict form instructed the jury to "assess [compensatory] damages for each claim separately and without regard to whether you have already awarded damages on another claim." JA at D12463, D12476. The district court assumed that the jury split the lost profits between Biamp and the WideBand defendants in contravention of this instruction. On the other hand, a total award of $956,000 in lost profits would be consistent with the jury instructions and our usual presumption that juries follow instructions. See Watts v. Laurent, 774 F.2d 168, 180 (7th Cir. 1985) (rejecting the argument that the jury's award against each defendant represented a fraction of the total liability because such a conclusion would require the court "to assume the jury disregarded its instructions. The jury was not instructed to reach a damage figure and then divide it up among the defendants it had found liable."). Further, the jury could have reasonably found that ClearOne suffered a total of $956,000 in lost profits. The defendants contested the assumption of ClearOne's damages expert that ClearOne would have made every sale to Biamp that WideBand made to Biamp. In particular, they presented evidence that WideBand

34

sold its code to Biamp at half the price that ClearOne sold its code to Biamp, and suggested that WideBand made more sales to Biamp than ClearOne would have made at ClearOne's higher price. The defendants' damages expert opined that ClearOne's expert over-estimated lost profits by several orders of magnitude. The jury could have reasonably concluded that ClearOne's lost profits were lower than the $1,912,000 figure that ClearOne offered. Thus, this is not a case where the jury's verdicts "are logical and probable only if they are aggregated." City of Richmond, 918 F.2d at 461 (stating that aggregation is permissible in such a case). We thus conclude that the district court erred because it selected the larger of two possible interpretations of the jury's verdict on the amount of lost profits.

Our decision in Bell v. Mickelsen, 710 F.2d 611 (10th Cir. 1983), does not compel a contrary conclusion. In that case, we upheld the district court's award of $10,000 based on a conclusion that the jury's assessment of $5,000 against each of two defendants represented an apportionment of damages. Bell presented a unique factual situation because the jury altered the verdict form in order to enter separate amounts of actual damages against each defendant. The district court instructed the jury to determine total actual damages and then to separately determine punitive damages for each defendant. The verdict form had only one line for actual damages, and two for punitive damages. Nonetheless, the jury decided to enter two amounts of actual damages as well as two amounts of punitive damages. Id. at 618. Thus, in Bell, there was conclusive evidence that

35

the jury apportioned damages. In this case, in contrast, the district court's determination that the jury apportioned damages is an inference based upon an assumption as to what the total damages should have been.

ClearOne argues that we should affirm the district court's judgment on lost profits because this case falls within an exception to the rule prohibiting additur. Courts have held that additur does not violate the Seventh Amendment "where the jury has found the underlying liability and there is no genuine issue as to the correct amount of damages," E.E.O.C. v. Massey Yardley Chrysler Plymouth, Inc., 117 F.3d 1244, 1252 (11th Cir. 1997), or where the amount of damages is fixed as a matter of law, see Rocky Mountain Tool & Machine Co. v. Tecon Corp., 371 F.2d 589, 598 (10th Cir. 1966). ClearOne's argument fails. The amount of lost profits in this case was not liquidated or established as a matter of law. The amount of lost profits was squarely within the province of the jury, and the cases to which ClearOne cites are not persuasive.

Having determined that the $1,912,000 lost profits judgment constitutes additur, we must determine the appropriate remedy. Courts have a "duty to attempt to reconcile juries' answers to special verdict questions in order to avoid the need for retrials." Palmer v. City of Monticello, 31 F.3d 1499, 1505 (10th Cir. 1994). Biamp argues that a new trial on damages is necessary. However, it argued before the district court that entry of judgment for lost profits in the amount of $956,000 was proper, see JA at D17663, and has therefore waived its

36

argument for a new trial. ClearOne argues that a lost profits award of $1,912,000 was necessary to "harmonize" the lost profits figure with the jury's assessment of damages against Yang. Aplee. Br. at 52. While ClearOne advances a plausible theory to explain the jury's various damages assessments, ClearOne does not demonstrate that the jury's assessments of damages were irreconcilably inconsistent. Further, ClearOne does not argue for a new trial. Therefore, we decline to order a new trial on damages. Because a jury verdict assessing $956,000 of lost profits damages against Biamp is not irreconcilably inconsistent with the remainder of the jury's verdict, we reverse the portion of the district court's judgment awarding lost profits damages against Biamp in the amount of $1,912,000, and remand with directions to the district court to enter judgment against Biamp for lost profits in the amount of $956,000.[9] And, because the district court's award of exemplary damages was based on the amount of actual damages, we also reverse the portion of the district court's judgment awarding exemplary damages against Biamp in the amount of $1,012,666.00, and remand with directions to the district court to enter judgment against Biamp for exemplary damages in the amount of $853,333.[10]

---

[9] As we discuss below, Biamp remains jointly and severally liable with the WideBand Defendants for this amount.

[10] To calculate exemplary damages, the district court first divided the original $1,912,000 lost profits figure by six (the number of defendants), and then added the unjust enrichment figure. Because we conclude that Biamp is liable for

(continued...)

*2) Joint and several liability*

Biamp also argues that the district court erred by imposing joint and several liability for lost profits. The Utah Liability Reform Act (ULRA) abolished joint and several liability in tort. Utah Code Ann. § 78B-5-818(3). Biamp argues that the ULRA precludes joint and several liability on ClearOne's misappropriation claim. ClearOne argues, in response, that misappropriation claims brought under the UUTSA are not subject to the ULRA.

We decline to reach this issue. This court will generally not consider an argument that was not raised in the district court. Tele-Commc'ns, Inc. v. Comm'r, 104 F.3d 1229, 1232 (10th Cir. 1997). Although Biamp cites to portions of the record in which it argued against joint and several liability, it identifies no portion of the record in which it argued that joint and several liability would violate the ULRA. Biamp also argues that the district court initially assured the parties that it would not impose joint and several liability for lost profits, but then entered a judgment that did so. However, Biamp did not raise this issue in its Rule 59(e) motion.

*3) Unjust enrichment*

Under the UUTSA, damages for misappropriation "can include both the actual loss caused by misappropriation and the unjust enrichment caused by

---

[10](...continued)
only $956,000 in lost profits, the amount of exemplary damages must be correspondingly adjusted, to $853,333 (853,333 = (956,000 ÷ 6) + 694,000).

misappropriation that is not taken into account in computing actual loss." Utah Code Ann. § 13-24-4(1). Biamp argues that the lost profits award exceeds the amount of profits that it made by selling the infringing product and, thus, that the unjust enrichment award is duplicative. Aplt. Br. at 52-53.

We conclude that Biamp has also waived this issue. In its brief, Biamp states that it "urged at trial" that the unjust enrichment damages were duplicative. Aplt. Br. at 52. The jury rejected this argument, and Biamp did not challenge the sufficiency of the evidence on unjust enrichment damages. Biamp fails to identify any portion of the record where it objected to the availability of unjust enrichment damages as a matter of law.

## D.  *Exemplary damages*

In its fourth general issue on appeal, Biamp argues that "[t]he district court's judgment entering $1,012,666 in exemplary damages against Biamp must be reversed" because "substantial evidence did not support the [jury's] finding of 'willful and malicious' trade secret misappropriation." Aplt. Br. at 55 (quoting Utah Code Ann. § 13-24-4(2)). In support, Biamp contends that exemplary damages may be awarded only if there was clear and convincing evidence that the defendant knew its conduct would be highly likely to cause particularized injury. Biamp further contends that a mere profit motive does not amount to maliciousness. See id. at 55-56, 58-59.

We interpret Biamp's arguments as a challenge to the sufficiency of the

39

evidence supporting the jury's finding that Biamp's misappropriation of ClearOne's trade secret was willful and malicious. Generally speaking, we review de novo a challenge to the sufficiency of the evidence supporting a jury's findings, so long as the same challenge "was appropriately raised in [a] Rule 50(a) motion . . . ." Meyer v. Christie, 634 F.3d 1152, 1158 (10th Cir. 2011).

The problem for Biamp is that the arguments it now asserts on appeal were never presented to the district court in a Rule 50(a) motion. To be sure, Biamp filed a Rule 50(a) motion at the close of ClearOne's case-in-chief arguing that ClearOne had failed to present sufficient evidence to satisfy the essential elements of its misappropriation claim. But Biamp's motion did not include any of the arguments it now attempts to present. Indeed, Biamp's motion did not expressly address the question of whether ClearOne's evidence was sufficient to establish that Biamp acted willfully and maliciously. Consequently, Biamp is precluded from asserting on appeal a challenge to the sufficiency of the evidence underlying the jury's finding that it acted willfully and maliciously in misappropriating ClearOne's trade secret.[11] See M.D. Mark, Inc. v. Kerr-McGee

_____

[11] In its brief opposing ClearOne's motion for exemplary damages, Biamp admitted that the jury's finding "enable[d], but d[id] not require, an enhanced damages award," but asked the district court to exercise its discretion and decline to award exemplary damages. JA at D13778. Biamp in turn asserted, for the first time, that the evidence presented at trial was insufficient to support the jury's findings that it acted willfully and maliciously]. The district court, in its April 20, 2009 order granting ClearOne's motion for exemplary damages, noted that "Biamp waived its right to" challenge the sufficiency of the evidence "because it

(continued...)

40

Corp., 565 F.3d 753, 762-65 (10th Cir. 2009) (discussing the ramifications of a defendant's failure to file a Rule 50(a) motion).

Even if we were to overlook Biamp's procedural default, we would still decline to address the merits of its appellate arguments because those arguments are based on a combination of federal and Utah state court holdings that are not reflected in the district court's jury instructions. That is, the standards upon which Biamp bases its appellate arguments are markedly different from the definition of "willful and malicious" set forth in the district court's jury instructions.[12] Biamp's failure to object to this instruction prevents it from arguing a different set of standards on appeal; "it can only argue whether the jury [and judge] properly applied the instruction to the facts." Atchley v. Nordam Grp., Inc., 180 F.3d 1143, 1148 (10th Cir. 1999).

*E. Attorneys' fees and related nontaxable expenses*

In its final issue on appeal, Biamp contends that the district court erred in

---

[11](...continued)
did not present a Rule 50(a) motion at the close of evidence." Id. at D17559.

After the district court entered final judgment, Biamp filed an unsuccessful Rule 50(b) motion, in which it again attempted to challenge the sufficiency of the evidence underlying the jury's findings that it acted willfully and maliciously.

[12] The jury instructions stated:
An act is willfully done if done voluntarily and intentionally and with the specific intent to commit such an act. An act is maliciously done if prompted or accompanied by ill will or such gross indifference to the rights of others as to amount to a willful act done intentionally without just cause or excuse.
JA at D12457.

41

imposing against it ClearOne's attorneys' fees and related nontaxable expenses. More specifically, Biamp argues that: (1) there was insufficient evidence that it engaged in willful and malicious misappropriation, as is necessary under the UUTSA to justify an award of attorneys' fees and expenses; (2) it was improper for the district court to order that all of the defendants, including Biamp, were jointly and severally liable for a portion of ClearOne's attorneys' fees and related nontaxable expenses; and (3) ClearOne provided inadequate evidence to substantiate the amount of attorneys' fees awarded.

We review a district court's attorneys' fees award for abuse of discretion. Mann v. Reynolds, 46 F.3d 1055, 1062 (10th Cir. 1995). In doing so, we review the district court's application of legal principles de novo, and we review the district court's findings of fact for clear error. Browder v. City of Moab, 427 F.3d 717, 719 (10th Cir. 2005).

*1) Sufficiency of the evidence of "willful and malicious misappropriation"*

Biamp argues that "ClearOne failed to present substantial evidence that Biamp acted willfully and maliciously," as required under Utah Code Ann. § 13-24-5 for the district court to impose fees and costs against Biamp. Aplt. Br. at 60. We conclude that Biamp failed to preserve this issue for appeal.

As we have already discussed, Biamp's Rule 50(a) motion failed to specifically challenge the sufficiency of ClearOne's evidence on the "willful and malicious" issue. Moreover, at no point in Biamp's objection to ClearOne's

42

motion for attorneys' fees did Biamp argue that there was insufficient evidence to support the jury's finding that Biamp acted willfully or maliciously. Rather, Biamp asserted that "a finding of willful or malicious trade-secret misappropriation, by itself, d[id] not render the award of fees mandatory," JA at D19894, and it proceeded to offer various reasons why the district court should decline to award fees and costs to ClearOne. Thus, in sum, the issue has been forfeited, and Biamp makes no attempt to establish the existence of plain error. See Richison v. Ernest Grp., Inc., 634 F.3d 1123, 1128 (10th Cir. 2011).

## 2) *Joint and several liability*

Biamp argues that the district court erred in imposing ClearOne's common attorneys' fees and related nontaxable expenses against all defendants jointly and severally. Biamp asserts that imposing attorneys' fees jointly and severally against all defendants contravenes the ULRA's express prohibition against joint and several awards. Biamp argues, in the alternative, that imposing joint and several liability for attorneys' fees was improper because an attorneys' fees award is punitive in nature and punitive damages should not be imposed jointly and severally.

We conclude that Biamp failed to preserve the ULRA argument for appeal. Although Biamp, in its objection to ClearOne's motion for attorneys' fees, challenged the propriety of imposing ClearOne's common attorneys' fees and nontaxable expenses jointly and severally against all defendants, it did not argue

43

that the ULRA barred a joint and several award.  In fact, Biamp first mentioned the ULRA in its objection to the magistrate judge's report.[13]  Even assuming, without deciding, that Biamp's objection to the magistrate judge's report asserted the ULRA argument, "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived."  Marshall v. Chater, 75 F.3d 1421, 1426–27 (10th Cir. 1996).  Thus, because Biamp failed to raise the ULRA argument to the magistrate judge, we conclude that this issue is waived.

We reject, on the merits, Biamp's argument that attorneys' fees awards pursuant to the UUTSA for "willful and malicious misappropriation" are punitive in nature.  Biamp contends that, because the same conduct can justify both an attorneys' fees award and an exemplary damages award, attorneys' fees awarded pursuant to the UUTSA for "willful and malicious misappropriation" are punitive in nature.  Aplt. Br. at 61.  While we could not locate any Utah case law on point, we conclude that an attorneys' fees award in this context is distinguishable from a punitive damages award.

---

[13]  Even in its objection to the magistrate judge's report, Biamp did not contend that the ULRA prohibited imposing attorneys' fees jointly and severally against the defendants.  Rather, Biamp reasoned that:

> Even for compensatory damages, the law strongly disfavors joint and several awards.  Under [the ULRA], a plaintiff generally may not recover from any defendant more than that defendant's proportionate share of liability.  There is no reason to believe that Utah courts would make an exception to the legislature's expressed preference against joint-and-several liability for an award of attorneys' fees under the UUTSA.  Here a "joint and several" award of attorneys' fees is particularly inequitable.

JA at D22631 (citation omitted).

44

Generally speaking, attorneys' fees are not imposed merely to punish and deter wrongful conduct. As the Utah courts have explained, "'the basic purpose of attorney fees is to indemnify the prevailing party and not to punish the losing party by allowing the winner a windfall of profit.'" Kealamakia, Inc. v. Kealamakia, 213 P.3d 13, 17 (Utah Ct. App. 2009) (quoting Softsolutions, Inc. v. Brigham Young Univ., 1 P.3d 1095, 1107 (Utah 2000)). Indeed, when addressing a separate issue in its objection to ClearOne's motion for attorneys' fees, Biamp recognized that "an award of attorneys' fees is designed to make a plaintiff whole by shifting the cost of litigation" while "an award of exemplary damages has nothing to do with compensating the plaintiff." JA at D19897.

Beyond these general assertions regarding attorneys' fees awards, we have previously explained that the patent law fee shifting provision, which is relevant when interpreting the UUTSA attorneys' fees provision, is compensatory, rather than punitive, in nature. In patent infringement cases, a "court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. An "exceptional" case is one where there is "such misconduct upon the part of the losing party as to constitute fraud on the Patent Office or (conduct) so unfair and reckless as to make it unconscionable for the prevailing party to sustain the expense of counsel." Plastic Container Corp. v. Cont'l Plastics of Okla., Inc., 607 F.2d 885, 905–06 (10th Cir. 1979) (internal quotation marks omitted). Notably, we have concluded that "[t]he award of attorney fees

45

[pursuant to 35 U.S.C. § 285] is compensatory rather than punitive." Id.

The portion of the UUTSA attorneys' fees provision at issue in this case is identical to Section 4 of the Uniform Trade Secrets Act. Compare Utah Code Ann. § 13-24-5 ("If . . . willful and malicious misappropriation exists, the court may award reasonable attorneys' fees to the prevailing party.") with Unif. Trade Secrets Act § 4 ("If . . . willful and malicious misappropriation exists, the court may award reasonable attorney's fees to the prevailing party."). Thus, we conclude that the commentary to Section 4 of the Uniform Trade Secrets Act is relevant when interpreting the UUTSA attorneys' fee provision. The commentary to Section 4 of the Uniform Trade Secrets Act expressly incorporates the patent law fee shifting provision, explaining that "patent law is followed in allowing the judge to determine whether attorney's fees should be awarded even if there is a jury, compare 35 U.S.C. [§] 285 (1976)[ (the patent law fee shifting provision)]." Unif. Trade Secrets Act § 4 cmt. As a result, we conclude that our prior interpretation of the patent law fee shifting provision as compensatory provides persuasive guidance when considering the UUTSA attorneys' fees provision. Thus, we conclude that an attorneys' fees award pursuant to the UUTSA for "willful and malicious misappropriation" is distinguishable from a punitive damages award.

### 3) Adequacy of ClearOne's evidence of recoverable costs

Biamp argues that ClearOne's evidence inadequately substantiated the

46

amount of common attorneys' fees and nontaxable expenses imposed against the defendants. Biamp contends that ClearOne's evidence consisted of "block bill[s]" that included "after-the-fact handwritten notations" to allocate fees, "ma[king] it impossible to determine which tasks were related to [ClearOne's] misappropriation claim against Biamp as opposed to unrecoverable fees or fees allocated only to the Wide[B]and Defendants." Aplt. Br. at 62. Further, Biamp asserts that, because the district court should have conducted an evidentiary hearing, this court should remand the case to the district court for a hearing to determine the appropriate award.

Under Utah law, the party requesting attorneys' fees has the burden of presenting sufficient evidence to support the award. Cottonwood Mall Co. v. Sine, 830 P.2d 266, 268 (Utah 1992). "[T]he evidence should include the hours spent on the case, the hourly rate or rates charged for those hours, and usual and customary rates for such work." Id. While only fees related to compensable claims are recoverable, Utah courts have recognized that a party need not allocate fees between compensable and non-compensable claims when the claims involve related legal theories and common sets of facts. Wilde v. Wilde, 35 P.3d 341, 349 (Utah Ct. App. 2001). We conclude that the district court did not abuse its discretion in relying on the documentation ClearOne provided to determine the amount recoverable. See Cadena v. Pacesetter Corp., 224 F.3d 1203, 1215 (10th Cir. 2000) (reviewing a party's challenge to the sufficiency of the evidence

47

supporting the district court's award of attorneys' fees for abuse of discretion).

In support of its request for attorneys' fees, ClearOne submitted a declaration from its lead attorney, James Magleby, asserting that "each and every invoice for attorneys' fees incurred in th[e] matter" had been filed with the court. JA at D18137. ClearOne asserted that it "ha[d] carefully gone through each and every invoice" to ensure that only recoverable fees were included in the requested amount, "eliminat[ing] fees for issues related to the Biamp-ClearOne license agreement, which were resolved prior to trial," "deduct[ing] the fees already awarded to ClearOne," and "eliminat[ing] fees related to [the 'spin-off' cases]." Id. at D18137–38. ClearOne further explained that it allocated the legal fees documented on the invoices into three categories: (1) "common fees" applicable to all defendants; (2) "WideBand [d]efendants only fees"; and (3) "Biamp only fees." Id. at D18138.

The magistrate judge, in conducting the initial review of ClearOne's motion, extensively analyzed the amount of attorneys' fees ClearOne requested and considered Biamp's objections. The magistrate judge explained that ClearOne's "records [we]re not block bills as Biamp claim[ed], but [instead] contain[ed] separate time entries on separate days on separate tasks for separate timekeepers." Id. at D22495. Reasoning that the claims in this case involved a core set of facts, the magistrate judge concluded that the records were "very sufficient" to "measure the amount of fees to be awarded." Id.

48

Similarly, the district court, in reviewing the magistrate judge's report and recommendation, concluded that ClearOne satisfied its burden to present sufficient evidence to support the attorneys' fees award "through the Declaration of James Magleby and the accompanying exhibits." Id. at D22721. The district court noted that "[it] [wa]s not convinced that ClearOne engaged in block billing," noting "[ClearOne's] detailed invoices (a very voluminous stack of documents), along with Mr. Magleby's sworn declaration that he and his colleagues reviewed all of the invoices and related documents, and allocated the fees and expenses incurred by ClearOne into different categories." Id. at D22721–22 (emphasis and internal quotation marks omitted). Further, the district court explained that ClearOne's allocations were sufficient because the claims involved a core set of facts common to the claims and the defendants. Id. at D22723.

Having concluded that the district court did not err in relying on Biamp's documentation, we in turn conclude that the district court did not abuse its discretion in imposing attorneys' fees without conducting an evidentiary hearing. See Robinson v. City of Edmond, 160 F.3d 1275, 1286 (10th Cir. 1998) (reviewing the district court's decision to deny an evidentiary hearing on the attorneys' fees issue for abuse of discretion). We have previously explained that "[a] district court does not abuse its discretion when it fails to hold a hearing at which the parties will simply reiterate arguments they already have made in their

49

briefs." Id. In this case, Biamp requested a hearing merely to "further demonstrate its position" regarding what it asserted were ClearOne's improper allocations of attorneys' fees. Id. at D22626 n.1. Biamp asserted this argument both in its objection to ClearOne's motion for attorneys' fees and in its objection to the magistrate judge's report. Thus, the district court did not abuse its discretion in denying the evidentiary hearing.

## III

We AFFIRM all aspects of the district court's judgment except for the lost profits and exemplary damages awards. As to those portions of the judgment, we REVERSE and REMAND with directions to enter judgment against Biamp for $956,000 in lost profits jointly and severally with the other defendants, and $853,333 in exemplary damages individually.

ClearOne's and Biamp's joint motion to unseal their opening briefs is GRANTED, with the provision that the information redacted from ClearOne's opening brief shall remain under seal. ClearOne's and Biamp's joint motion to file unsealed reply briefs is GRANTED. As a result thereof, the original reply briefs shall remain under seal and the redacted versions of the reply briefs shall be made publicly available. ClearOne's motion requesting that Biamp's original reply brief remain under seal with respect to the WideBand defendants is also GRANTED.